**In re NHB, LLC and Warrenton Products, Inc., Debtors.**

**Talking Rain Beverage Company, Inc., Movant,**

**v.**

**NHB, LLC and Warrenton Products, Inc., Respondents.**

**Bankruptcy Nos. 01–51416–293, 01–51417–293.**

**Adversary No. 02–4139–293.**

United States Bankruptcy Court, E.D. Missouri, Eastern Division.

Sept. 9, 2002.

John Talbot Sant, Jr., Armstrong Teasdale LLP, St. Louis, MO, for NHB, LLC.

Robert E. Eggmann, Copeland, Thompson & Farris, P.C., Kyler L. Humphrey, Sueltaus & Walsh PC, St. Louis, MO, for Warrenton Products.

David A. Warfield, Husch & Eppenberger, LLC, St. Louis, MO, Edward R. Coulson, Foster Pepper & Shefelman PLLC, Seattle, WA, for Talking Rain Beverage Company, Inc.

## MEMORANDUM OPINION

DAVID P. McDONALD, Bankruptcy Judge.

Debtors moved for a partial summary judgment concerning Talking Rain's claim. Debtors asserted that any liability that they may have to Talking Rain is limited by the bottling agreement entered between the parties. The Court agreed with Debtors' position and granted summary judgment on that issue on June 25, 2002. Talking Rain has moved for the Court to reconsider its order. The Court finds that none of the points raised in the motion is grounds for revising its previous order.

Accordingly, Talking Rain's motion will be denied.

### JURISDICTION AND VENUE

This Court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 151, and 157 and Local Rule 9.01(B) of the United States District Court for the Eastern District of Missouri. This is a "core proceeding" pursuant to 28 U.S.C. §§ 157(b)(2)(B), which the Court may hear and determine. Venue is proper in this District under 28 U.S.C. § 1409. The Court may reconsider its previous orders under Fed. R. Bankr.P. 9023.

### FACTUAL FINDINGS

The following facts were established in the Court's previous order:

1. Debtors NHB, LLC and Warrenton Products, Inc. own a bottling facility in Warrenton, Missouri. Debtors bottle and package various products made by other entities.

2. Talking Rain Beverage Company, Inc. produces bottled water products including DIET ICE BOTANICALS and ICE BOTANICALS.

3. In January 1999, Debtors[1] and Talking Rain entered into a written agreement wherein Debtors agreed to bottle DIET ICE BOTANICALS and ICE BOTANICALS.

4. The agreement contained various provisions, including a limitation of liability clause in paragraph 13.

5. Talking Rain filed a proof of claim in the amount of $1,500,000.00. The claim was amended to $3,750,000.00.

6. Talking Rain's claim is based on the allegation that Debtors breached the agreement by improperly bottling approximately 90,000 cases of ICE BOTANICALS wa-

---

1. Warrenton Products and Talking Rain are the actual parties to the contract. NHB and Warrenton Products are the owners of the bottling operation. NHB has not objected to Talking Rain's claim that NHB is liable under the contract.

ter. Additionally, Talking Rain asserted claims of fraud and negligent misrepresentation based on Debtors' alleged false representations of the quality control results of various bottling runs.

7. Debtors objected to Talking Rain's claim and have asserted a counterclaim for breach of contract. Debtors assert that the ingredients supplied by Talking Rain to make ICE BOTANICALS were defective and/or were unfit for use in producing that beverage.

## DISCUSSION

The facts of this case are set out in the Court's previous order and are familiar to the parties. Debtors moved for partial summary judgment concerning the amount of damages which Talking Rain may recover if it is successful in its claims against Debtors. Debtors asserted that the bottling agreement contained a limitation of liability provision which limits the amount that Talking Rain could recover from Debtors, in a contract or a tort action, for any harm caused by Debtors in bottling Talking Rain's flavored water product. Talking Rain asserted that its claim of fraud and negligent misrepresentation prevented the enforcement of the limitation of liability provision. The Court granted Debtors' motion for partial summary judgment finding that the bottling agreement limited the recovery for any claim sounding in tort or contract.

Talking Rain filed a motion for reconsideration on three grounds. First, Talking Rain asserts that the Court erred in finding that Missouri law allows sophisticated businesses to enter contracts with each other that limits the recovery of damages which arise from the contractual relationship. Second, Talking Rain asserts that its damages should not be limited because the bottling agreement contained a termination clause which trumps the limitation of liability clause. Third, the term indem-

nity used in several provisions created an ambiguity in the bottling agreement.

*Missouri contract law*

 Missouri law allows sophisticated parties to enter contracts with each other which contain provisions which would be unenforceable if the parties were not both sophisticated. More specifically, "[s]ophisticated parties have freedom of contract—even to make a bad bargain, or to relinquish fundamental rights." *Purcell Tire & Rubber Company, Inc. v. Executive Beechcraft, Inc.*, 59 S.W.3d 505, 508 (Mo.2001). Missouri law does limit sophisticated parties to the extent that it will not enforce a contract provision which completely exonerates the parties from any liability for gross negligence or intentional acts even though the parties might have agree to such a provision. *See Alack v. Vic Tanny Int'l of Missouri, Inc.*, 923 S.W.2d 330, 337 (Mo.1996); *Liberty Financial Management Corp. v. Beneficial Data Processing Corp.*, 670 S.W.2d 40, 48 (Mo.Ct.App.1984). However, Missouri law does allow sophisticated businesses to enter contracts with each other which, short of complete exoneration, limits the liability for gross negligence or a willful injury which arises out of the performance of the contract. *Id.*

Talking Rain's first point in its motion for reconsideration is that *Liberty Financial* does not stand for the proposition just stated. Talking Rain's position is incorrect.

The parties in *Liberty Financial* entered a data processing contract in which Bencom agreed to provide services to Liberty. The relationship soured and Liberty sued Bencom for breach of contract and misrepresentation. Paragraph 12 of the contract limited the liability of Bencom for any willful acts or for gross negligence. Paragraph 12 provided the following:

12. LIABILITY

A. In the event of a *willful act* directed toward subscriber [Liberty] individually, or *gross negligence* by an agent or employee of Bencom of such an unusual or high degree that it would be beyond that which would ordinarily be assumed by Subscriber in providing for itself the services to be performed hereunder Bencom will compensate Subscriber any and all of its *out-of-pocket losses* and will hold Subscriber harmless from and [sic, any] and all claims of loss by a third party as a result of such *willful act or gross negligence.*

B. In the event of an error or omission by any agent or employee of Subscriber, Subscriber will hold Bencom harmless from any and all claims of loss by a third party as a result of such error or omission.

C. In any event not covered by 12.A or 12.B herein above, the costs and expenses of each party shall be borne by the party which incurs them.

*Liberty Financial,* 670 S.W.2d at 46 (emphasis added).

The trial judge refused to give effect to paragraph 12 and removed it from the jury's consideration. *Id.* at 47. A verdict was entered for Liberty and Bencom appealed. The Missouri Court of Appeals was asked to construe the meaning of paragraph 12. Liberty argued that it only limited damages for willful acts or gross negligence. *Id.* Liberty contended that paragraph 12 did not limit liability or damages for any acts short of willfulness or gross negligence. *Id.*

Bencom argued that under paragraph 12 it could only be liable for willful acts or gross negligence and then only for out-of-pocket losses. For any other acts each party was to bear its own costs and expenses under paragraph 12.C.

The Missouri Court of Appeals held that the plain meaning of paragraph 12.C is that in any event not covered by 12.A or 12.B, each party will bear its own costs, regardless of which party was at fault. *Id.* "Thus, under the terms of the contract, Bencom is liable for breach of contract only for willful or grossly negligent acts, and then only for 'out-of-pocket losses' resulting from the breach, but 'not any loss of business losses.'" *Id.*

The court acknowledged the principle that parties may not exonerate themselves from liability for harm willfully inflicted or caused by gross negligence. *Id.* at 48. However, the court found that paragraphs 12.A and 12.C. were permissible because they "were intended to limit liability and not to provide a penalty so as to induce Bencom's performance." *Id.*

Liberty also argued that the construction of paragraph 12 to disallow damages for acts of simple negligence is unconscionable. The court found that "[p]aragraph 12.A of the contract was singled out for special attention of the parties.... Nothing was hidden and there was no surprise. There was no unconscionability, procedural or substantive. The trial court erred in withdrawing Paragraph 12 of the contract from the jury's consideration." *Id.* at 50.

The court in *Liberty Financial* clearly discussed the impact of paragraph 12.A. It acknowledged the principle that a party may not contractually exonerate itself from willful acts or gross negligence. Then it went on to find that paragraph 12.A. limited the liability for willful conduct and gross negligence and that the provision was not unconscionable. Ultimately it found that the trail court erred by not submitting such a limitation of liability to the jury. Such findings clearly indicate that the court reasoned that short of complete exoneration, sophisticated parties may contractually limit their liability to each other for willful acts and gross

negligence. Exoneration versus a limitation of liability is a distinction with a difference.

Therefore, this Court believes that *Liberty Financial* stands for the proposition that sophisticated parties, like those before this Court, may contractually limit their liability for even willful act or gross negligence. The Court reached that conclusion in its previous order and found that the bottling agreement between Talking Rain and Debtors limited Debtors' liability even for damages alleged to have been caused by willful acts or gross negligence.

*The application of stare decisis*

■ Talking Rain asserts that even if *Liberty Financial* does stand for the proposition that sophisticated parties may contractually limit their liability for gross negligence or a willful injury which arises out of the performance of the contract, a subsequent case from the District Court of the Eastern District of Missouri interpreted *Liberty Financial* as not allowing such agreements. *See Sasco, Inc. v. Wells Fargo Alarm Services, Inc.*, 969 F.Supp. 535 (E.D.Mo.1997). Talking Rain asserts that

this Court is compelled to follow the holding of the district court in *Sasco* based on the doctrine of stare decisis.[2]

The Court must confess that it had always assumed that the decisions of the district court were binding on the bankruptcy courts in that same district. However, this is the first occasion that the Court has actually ever been asked to squarely address that issue.

After researching the issue it appears that a greater number of courts who have considered the issue have found that bankruptcy courts in multi-judge districts are not bound by the decision of a single district court.[3] Those courts base their conclusion on well reasoned analysis of the doctrine of stare decisis and the implications of that doctrine to the bankruptcy courts.

A quandary for bankruptcy judges sitting in a multi-judge district is whose decision to follow when district judges in the same circuit have reached conflicting decisions on an issue. In the United States Circuit Courts, subsequent panels are bound by the holdings of panels who have

---

**2.** In support of the proposition that a bankruptcy court is bound by the decision of a district court within the same district, Talking Rain cites the case of *In re Jehan–Das, Inc.*, 91 B.R. 542 (Bankr.W.D.Mo.1988). In that opinion, Judge Koger, without any citation to authority, simply states that he is bound by a decision of the District Court in the Western District of Missouri. *Id.* at 546. Judge Schemer of the Eastern District of Missouri has also held that bankruptcy courts are bound by decisions of a higher court having direct appellate review, specifically, those decisions of the district court in the same district in which the bankruptcy court sits. *Catalona v. Holdenried (In re Holdenried)*, 178 B.R. 782, 786 (Bankr.E.D.Mo.1995). Judge Schermer did not cite any authority in support of that proposition.

In *In re Shunnarah*, 273 B.R. 671, 672–673 (M.D.Fla.2001), District Judge Schlesinger explained that bankruptcy courts are bound to follow the published decision of a single district court in a multi-judge district until another district judge publishes a contrary opinion. That conclusion was drawn from the reasoning expressed in *In re Phipps*, 217 B.R. 427 (Bankr.W.D.N.Y.1998). Judge Schlesinger stated that because "a bankruptcy court is an Article I court, and appeals from such court are taken to Article III courts, which have reversal power over the bankruptcy courts, ... the bankruptcy courts are 'inferior' courts for purposes of stare decisis."

The Court notes that none of the courts faced with this issue have addressed the situation, as in the present case, where the district court opinion was issued by a federal magistrate judge, who, like a bankruptcy judge, is an Article I judge.

**3.** Neither the United States Supreme Court or any of the Courts of Appeal have addressed this issue.

previously considered an issue. This creates continuity in the circuit which can only be changed by an en banc review by the Circuit Court or by an adverse ruling by the Supreme Court of the United States.

District courts are not constrained by the same doctrine. A district judge is not bound by previous decisions of a sister court in the same district. *See Threadgill v. Armstrong World Industries, Inc.* 928 F.2d 1366 (3rd Cir.1991). Hence the goal of continuity and stability sought by the doctrine of stare decisis is lacking because district judges are free to adopt or ignore prior rulings of other judges in the district. Such discontinuity trickles down to the bankruptcy courts. To compel bankruptcy courts to follow a district court's decision does not create a binding precedent because, unlike the circuit court where decisions of a previous panel is binding upon the court, a sister district court may reach the opposite conclusion on the same issue at a later date. When that happens no precedent has been established and the bankruptcy court is free to follow whichever district decision it deems to be correct. Because of the lack of binding precedent in the district court, it makes little sense to bind the bankruptcy courts to the first district court decision on an issue when the opposite decision can be reached by another district judge. Because district courts are not restricted in their rulings, parties will have a strong incentive to appeal an adverse decision of a bankruptcy court regardless of whether prior district court decisions are viewed as binding on the bankruptcy courts. Such a scheme does not create the stability which is found on the circuit court level or contemplated by the doctrine of stare decisis.

District courts do have the ability to sit en banc and any decision from that body is deemed to be binding on the entire court.

*See generally* John R. Bartels, *United States District Courts En Banc—Resolving the Ambiguities,* 73 Judicature 40, 42 (1989). Short of en banc rulings then, district court decisions do not create the continuity and stability which is the basis of the doctrine of stare decisis. This Court concludes that the decision of an individual district court in a multi-judge district is not binding on a bankruptcy court. A thorough discussion of this position is found in *First of America Bank v. Gaylor,* 123 B.R. 236, 241–243 (Bankr. E.D.Mich.1991). *See also Life Ins. Co. of Virginia v. Barakat,* 173 B.R. 672, 678–680 (Bankr.C.D.Cal.1994); *Bairstow v. Sullivan,* 198 B.R. 417, 423 n. 34 (Bankr. D.Mass.1996); *In re Virden,* 279 B.R. 401, 409 n. 12 (Bankr.D.Mass.2002); *Carrozzella & Richardson,* 255 B.R. 267, 271–273 (Bankr.D.Conn.2000)(holding bankruptcy courts are not bound by decisions of the district court or the bankruptcy appellate panel); *In re Williams,* 257 B.R. 297, 301 n. 5 (Bankr.W.D.Mo.2001)(Judge Venters held that the decisions of the bankruptcy appellant panel are not binding on the bankruptcy courts in the same circuit).

Talking Rains assertion that this Court must follow the decision of the opinion in *Sasco, Inc. v. Wells Fargo Alarm Services, Inc.,* 969 F.Supp. 535 (E.D.Mo.1997) is therefore not correct. Although the Court respects the decision of the court in *Sasco* it is not bound by its decision regarding the holding in *Liberty Financial.*

In the last paragraph of the *Sasco* opinion, the court notes that Missouri law does not allow parties to contractually exonerate themselves for willful acts or gross negligence. *Id.* at 540. *Sasco* correctly cites to *Liberty Financial* for that proposition. But then the court concludes that the *limitation of liability* provision in the disputed contract cannot be enforced against the plaintiff's claims of gross negli-

gence and fraud. *Id.* This conclusion misses the nuance of the holding in *Liberty Financial.* That holding approved of the contractual limitation of liability by sophisticated parties for willful acts and gross negligence even though a total exoneration from liability would not be enforced. Because the Court finds that *Sasco* misconstrued the holding in *Liberty Financial,* the Court declines to follow that decision.

Talking Rain also offers the case of *Warner v. Southwestern Bell Telephone Co.,* 428 S.W.2d 596 (Mo.1968) for the proposition that parties may not contractually limit their liability for conduct that is wanton and willful. Although that is the holding of the case it is limited by the facts and parties in the case. The Supreme Court of Missouri clearly recognized that parties may contractually limit their liability and in matters of private contracts "the parties may validly agree upon such limitation as they choose." *Id.* at 601–602. However, the case before the Court did not involve a private contract, it dealt with a the terms of public utility's publicly filed rate schedule. The Court stated that because a public utility is "strictly regulated in its rights and privileges, it should likewise be regulated to some extent in its liabilities, and that such limitations are at least indirectly considered and involved in establishing its rates." *Id.* at 601. The Court clearly makes a distinction between the treatment of private contracts and public tariffs. This Court finds that distinction is central to the holding in *Warner.* The ruling in that case regarding the limitation of liability does not apply to the present case. The Court also notes that *Liberty Financial* was decided sixteen years after the *Warner* decision and makes no mention of *Warner* or its holding.

*Termination of contract provision*

■ Talking Rain's second point for reconsideration is a provision in the bottling agreement, paragraph 21, which purports to terminate the contract upon a material breach by either party. Talking Rain asks the Court to conclude that Debtors materially breached the contract in the first few days of bottling Talking Rain's product. Therefore, the bottling agreement was immediately terminated and the limitation of liability provision became extinct. Talking Rain contends that Debtors continued to bottle at their own peril without the protection of a limitation of liability agreement.

Talking Rain fails to cite any authority for the proposition that a contract can be terminated without allowing a cure for alleged breaches of the terms of the agreement. It asserts that the first time that Debtors deviated from the terms of the agreement the agreement was terminated. The Court does not believe that is the state of the law in Missouri.

The parties specifically contracted to limit their liability in their bottling relationship. Damages that arose from the main purpose of that relationship, the bottling of flavored water, are addressed by the limitation of liability provision. The intent of the parties was to limit their liability for any damages in tort or contract. Talking Rain fails to cite any authority on how to measure damages where a contract automatically terminated due to a material breach but the parties continue to perform under the contract. Even under such circumstances the terms of the contract dealing with damages would certainly be influential if not binding on the parties.

The Court believes that the question of if and when a party materially breached the bottling agreement is an issue for trial. In its ruling on the motion for partial summary judgment the Court held that the bottling agreement contained an enforceable limitation of liability provision.

That provision applies to this case for any claims sounding in tort or contract.

*The meaning of the word indemnity*

 Finally, Talking Rain takes issue with the Court's interpretation of the word indemnify to apply only to a reimbursement of money paid to third parties. In support of this definition the Court turned to Missouri law and Black's Law Dictionary.

Talking Rain has submitted a very strained definition of the term indemnity as applying to direct injuries between two contracting parties. It found this unusual interpretation of the term in the unpublished opinion of *Regional Transportation Authority v. Gibbons,* 1994 WL 23023 (N.D.Ill. Jan. 25, 1994). According to Westlaw, not one case or any other source has cited this case for any proposition, nevertheless its interpretation of the word indemnity.

The Seventh Circuit Court of Appeals has ordered its courts not to cite or use as precedent unpublished opinions. *See Standard Mutual Ins. Co. v. Bailey,* 868 F.2d 893, 895 n. 2 (7th Cir.1989)("We caution and remind the district judges to follow the rule of this circuit prohibiting the citation of unpublished opinions as precedent: 'Unpublished order[s] . . . except to support a claim of res judicata, collateral estoppel or law of the case, shall not be cited or used as precedent . . . by any [federal court within the circuit] for any purpose.' Circuit Rule 53(b)(2)(iv)."). This Court declines to accept the definition of indemnity used in a case which could not be cited by other courts within its own circuit.

For the foregoing reasons the Court will deny Talking Rain's motion for reconsideration. An Order consistent with this Memorandum Opinion will be entered this date.