**In re LOEWEN GROUP INTERNA-TIONAL, INC., a Delaware corpora-tion, et al., Reorganized Debtors.**

No. 99–1244 (PJW).

United States Bankruptcy Court, D. Delaware.

April 16, 2003.

William H. Suddell, Jr., Michael G. Busenkell, Jason W. Harbour, Morris, Nichols, Arsht & Tunnell, Wilmington, DE, Richard M. Cieri, Jones Day, Cleveland, OH, R. Matthew Martin, Jones Day, Atlanta, GA, for the Reorganized Debtors.

William D. Sullivan, Elzufon, Austin, Reardon, Tarlov & Mondell, P.A., Wilmington, DE, David A. Golin, Gesas, Pilati, Gesas and Golin, Ltd., Chicago, IL, for Selling Shareholders.

## MEMORANDUM OPINION

PETER J. WALSH, Chief Judge.

This opinion addresses the issue of whether a trustee's status as a bona fide purchaser of real property pursuant to 11 U.S.C. § 544(a)(3) is paramount to the right of an equitable trust beneficiary.[1] Loewen Group International, Inc. ("Loewen") and Mt. Nebo of the Palm Beaches Memorial Gardens, Inc. ("Mt. Nebo", collectively with Loewen "Debtors"), are affiliated debtors in these administratively consolidated cases. Debtors assert that Mt. Nebo as a debtor in possession is deemed a bona fide purchaser of estate property and is entitled to the entire proceeds (the "Proceeds") of the sale of that property. In opposition, the former shareholders of Weinstein Family Services, Inc., Devon Livery, Inc. and Mt. Nebo, through their agents, Norman Cutler and Joel Weinstein ("Selling Shareholders") contend that this Court's prior ruling that Selling Shareholders are the beneficiaries of a resulting trust entitles them to a one half share of the Proceeds. Selling Shareholders also argue that Debtors are barred by waiver and other procedural deficiencies from asserting the § 544(a)(3) defense at the eleventh hour of this dispute resolution.[2] For the reasons discussed below, I conclude that Mt. Nebo has effectively asserted the § 544(a)(3) defense and that Mt. Nebo's right to the Proceeds trumps any rights arising out of the resulting trust. However, for the reasons discussed below, I conclude that Selling Shareholders are entitled to an allowed unsecured claim against Loewen.

## BACKGROUND

In 1995, Debtors entered into an agreement to purchase all of the outstanding

1. The Bankruptcy Code, 11 U.S.C. § 101 *et seq.,* is hereinafter referred to as "§ ____."

2. Section 544(a)(3) provides:

 The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

 \* \* \* \* \* \*

 (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser exists.

shares of Weinstein Family Services, Inc., Devon Livery, Inc. and Mt. Nebo (the "Share Purchase Agreement"). Prior to entering into the Share Purchase Agreement, Mt. Nebo's sole asset consisted of an option to purchase approximately 37.33 acres of land in Palm Beach County, Florida (the "Property"). Mt. Nebo held the option intending to develop a cemetery on the Property. Selling Shareholders signed the Share Purchase Agreement on August 17, 1995 and the transaction closed on October 11, 1995. The Share Purchase Agreement provided as follows regarding the Property:

*Purchase of Undeveloped Land.* On the Closing Date Buyer [Loewen] and Seller [Selling Shareholders] will advance equal sums to the Company [Mt. Nebo], or its designated nominee, for the purchase by the Company of that certain land previously purchased by two of the trusts maintained by the Company for future development in Florida (all such land is more particularly described under Exhibit I as "Undeveloped Land"). Seller's portion of such advance shall be repaid to Seller from the cash flow of the cemetery to be developed on the Undeveloped Land in accordance with the repayment calculation described below. Interest will accrue on Seller's portion of the advance from the date that the proposed cemetery commences operations or a certificate of need is issued at the per annum rate of 8%. Principal and interest will be payable to Seller in semi-annual lump sum payments, payable within the 60 day period following expiration of each January 1 and June 30 commencing with and during a period of 7 years from the date on which (i) a certificate of need is issued; or (ii) retail operations commence at such property, whichever occurs first, and will be paid solely from the cash flow derived from the subject cemetery operations in accordance with the following formula: . . . .

If any amount remains due and payable to Seller in connection with Seller's advance at the expiration of such 7 year period, a balloon payment will be made to Seller in an amount equal to the amount then outstanding and payable to Seller within the 90 day period following the expiration of such period.

In the absence of receipt by the Company of a Certificate of Need issued by the State of Florida upon its approval of cemetery operations, or the cemetery opening, on or before the first anniversary of the Closing, then unless otherwise agreed, Buyer shall cause the Undeveloped Land to be sold and the proceeds of sale, less all related costs of sale, shall be divided equally between Seller and Buyer.

Joint Pretrial Order at 5–6 (quoting paragraph 6B of the Share Purchase Agreement).

At closing, Mt. Nebo exercised the option and purchased the Property. The purchase funds consisted of a $475,110 cash contribution from Loewen and a $475,110 deduction from the total sale proceeds received by Selling Shareholders under the Share Purchase Agreement. Selling Shareholders would recover their advance either from cemetery revenues or, if the conditions in paragraph 6B were not met, from the Property's sale. By October 11, 1996, the one-year anniversary of the closing, Loewen had neither developed a cemetery nor received the required certificate of need from the State of Florida. Consequently, Selling Shareholders started requesting that Loewen sell the Property in accordance with the Share Purchase Agreement. (Doc. # 3014 at 2, ¶ 4).

On June 1, 1999, Debtors, together with other affiliated debtors, filed a voluntary petition for relief under chapter 11 of title 11 of the Bankruptcy Code. Debtors considered the Property unessential to their reorganization and, on December 30, 1999, filed a motion for authority to sell the Property (Doc. # 2937). Debtors' motion recognized that Selling Shareholders asserted an interest in the Proceeds and requested that the Court escrow one-half of the Proceeds pending a determination of Selling Shareholders' entitlement. (Doc. # 2937 at 4 n. 2). Selling Shareholders objected to the sale motion and requested a court order escrowing all of the Proceeds. (Doc. # 3014 at 3, ¶ 7). They argued that the Share Purchase Agreement created a resulting trust so that Mt. Nebo only held bare legal title to the Property for the benefit of Loewen and Selling Shareholders. Selling Shareholders asserted that their status as equitable owners of the Property entitled them to an ownership interest in one-half of the Proceeds. In reply, Debtors claimed that Selling Shareholders are not entitled to any portion of the Proceeds and that they merely had an unsecured claim against Loewen in the amount of $475,110. (Doc. # 3035 at 5–6).

By a January 21, 2000 order Debtors were authorized to sell the Property. (Doc. # 3085). The order required that the Proceeds be escrowed "pending further order of the Court or an agreement between the parties." (Doc. # 3085 at 2). Scheduling requirements and various deadlines for discovery and pre-trial briefing were also set forth in that order. Between January 21, 2000 and January 10, 2003, the parties filed six stipulated orders extending the discovery period.

The Court confirmed a fourth amended joint plan of reorganization ("the Plan") in this case on December 5, 2001. (Doc. # 8671). The Plan (Doc. # 7912) addresses the reorganization of over 800 separate affiliated debtors, including Debtors, but does result in substantive consolidation of the debtors. According to the Plan, unsecured creditors with nonpriority claims are placed in Class 11 and then placed in divisions according to the debtor their claims relate to. (Doc. # 7912 at 25). Unsecured creditors of Mt. Nebo are in Division H, while unsecured creditors of Loewen are in Division B. (Doc. # 7912 at Ex. 1.A.48).

The Court conducted an evidentiary hearing on January 10, 2003, to determine whether the Share Purchase Agreement created a resulting trust. At the conclusion of the hearing, I ruled from the bench that under the Share Purchase Agreement Mt. Nebo held title to the Property pursuant to a resulting trust for the benefit of Loewen and Selling Shareholders so that Selling Shareholders were entitled to one half of the Proceeds. An order to that effect was entered on January 21, 2003. (Doc. # 9917 at 2). Loewen's counsel first raised the issue of § 544(a)(3)'s applicability at the January 10, 2003 hearing, contending that this section defeated Selling Shareholders' resulting trust interest in the Proceeds. Because Debtors neither briefed nor otherwise addressed this issue prior to the trial, I declined to hear argument at that time on § 544(a)(3)'s applicability and instructed the parties to brief the issue. Following the briefing, on March 21, 2003, I heard oral argument as to the effect of § 544(a)(3) on Selling Shareholders resulting trust interest.

Debtors' post trial brief focuses on the following three issues: (1) Did Mt. Nebo hold the rights and powers of a bona fide purchaser of the Property by operation of § 544(a)(3)? (2) Under Florida law, are the rights and powers of a bona fide purchaser superior to those of a resulting

trust beneficiary? (3) Have Mt. Nebo's rights and powers under § 544(a)(3) been extinguished by § 546(a)'s two year limitations period?[3] (Doc. # 9921 at 2).

Debtors contend that this Court should follow a Delaware District Court opinion holding that under § 544(a)(3) a chapter 7 trustee may avoid the rights of an equitable trust beneficiary. *See Mullins v. Burtch (In re Paul J. Paradise & Associates)*, 249 B.R. 360 (D.Del.2000). Debtors claim that, under Florida law, a bona fide purchaser of real property can defeat the interest of an unrecorded beneficial owner of such property. Debtors argue that § 546(a)'s statute of limitations period does not apply because § 544(a)(3) is being invoked defensively.

In their brief, Selling Shareholders answer two of Debtors' three arguments. (Doc. # 9937). First, Selling Shareholders contend that the *Paradise* opinion was wrongly decided and is not binding on this Court. Selling Shareholders seek a holding that § 541(d)'s exclusion of an equitable interest when a debtor only possesses legal title is superior to § 544(a)'s grant of avoidance powers.[4] Second, Selling Share-

holders believe that Mt. Nebo is subject to § 546(a)'s two-year statute of limitations because § 544(a)(3) is being used offensively by Mt. Nebo. Selling Shareholders do not address Florida law in their brief and did not contest its applicability at the March 21, 2003 hearing. Finally, Selling Shareholders argue that Debtors cannot raise § 544(a)(3) defensively at the time of trial because D. Del. LR 16 and Del. Bankr.LR 7016 require that Debtor disclose all defenses in the pretrial order.

## DISCUSSION

Pursuant to § 1107(a), a debtor in possession assumes all the rights, powers and duties of a trustee.[5]

Debtors argue that § 544(a)(3) trumps any interest arising out of the resulting trust based on the Share Purchase Agreement. *See* (Doc. # 9921) at 3–5. In support Debtors cite *Mullins v. Burtch (In re Paul J. Paradise & Associates)*, 249 B.R. 360, 366 (D.Del.2000), which affirmed *Mullins v. Paul J. Paradise & Associates (In re Paul J. Paradise & Associates)*, 217 B.R. 452 (Bankr.D.Del.1997). In both

---

**3.** Section 546(a) provides:

An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of—
(1) the later of—
(A) 2 years after the entry of the order for relief; or
(B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or
(2) the time the case is closed or dismissed.

**4.** Section 541(d) provides:
Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as to which the debtor retains

legal title to service or supervise the servicing of such mortgage or interest, becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

**5.** Section 1107(a) provides:

Subject to any limitations on a trustee serving in a case under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter.

opinions, the courts interpreted § 544(a)(3) as granting a trustee priority over an unrecorded equitable trust interest.

In *Paradise,* the District Court was asked to determine whether the trustee's § 544(a)(3) strong arm powers defeated an equitable interest in real property. The District Court found that an equitable interest in real property is subject to the trustee's strong arm powers if the trustee could avoid that interest under applicable state law. The applicable state law was Delaware. Because Delaware law permitted a bona fide purchaser to avoid an equitable interest if there was no notice of its existence, the District Court found that § 544(a)(3) trumped § 541(d)'s equitable interest exclusion.

Relying on *Talking Rain Beverage Co., Inc v. NHB, LLC (In re NHB, LLC),* 287 B.R. 475 (Bankr.E.D.Mo.2002), Selling Shareholders question the precedential value of the *Paradise* opinion, contending that the decision of an individual district court judge in a multi-judge district is not binding on a bankruptcy court. *See* (Doc. # 9937) at 5 n. 2 (citing *Talking Rain,* 287 B.R. at 480). Selling Shareholders urge the Court to accept the reasoning and holding of *Talking Rain,* hoping that once their interpretation of *stare decisis* is adopted, the Court will be free to rule contrary to *Paradise.* A contrary ruling being that § 541(d) trumps § 544(a)(3) and the trustee lacks the authority to pull an equitable interest into the bankrupt's estate.

■ I do not find it necessary to address Selling Shareholders *stare decisis* argument because I find the *Paradise* decision persuasive authority on the issue before me. Despite Selling Shareholders' contention that *Paradise* is not on point because the District Court only focused on a constructive trust, I believe the differences between a constructive trust and a resulting trust are immaterial in this § 544(a)(3) context. Florida law, the applicable state law here, does not differentiate between a constructive trust or resulting trust when addressing a bona fide purchaser's rights regarding real property. Florida statutory law provides that:

> [n]o conveyance, transfer, or mortgage of real property, or of any interest therein, nor any lease for a term of 1 year or longer, shall be good and effectual in law or equity against creditors or subsequent purchasers for a valuable consideration and without notice, unless the same be recorded according to law;
>
> . . .

FLA. STAT. ANN. § 695.01(1) (West 2002).

■ Florida's Third District Court of Appeal has noted that a "constructive trust beneficiary's interest in real property is, by definition, an unrecorded interest which is inferior to the interest of a bona fide purchaser of the real property." *See Dubai Islamic Bank v. Attorneys' Title Ins. Fund,* 778 So.2d 413, 413 (Fla.Dist.Ct.App. 2001); *see also In re Mabbott,* 255 B.R. 787, 790 (Bankr.M.D.Fla.2000) (holding that under Florida law, unperfected equitable interests are subordinated to interests of judicial lien creditors); *Weissing v. Gerring (In re G & R Builders, Inc.),* 123 B.R. 654, 660 (Bankr.M.D.Fla.1990) (noting § 544 only charged trustee with notice that appeared in public record as of filing of bankruptcy). Because a bona fide purchaser of real property under Florida law may avoid an unrecorded interest, Mt. Nebo may use § 544(a)(3) to avoid Selling Shareholders' unrecorded resulting trust interest.

■ Having determined that Mt. Nebo possesses the status of a bona fide purchaser and that its rights are superior to those of an equitable trust beneficiary, the Court must now determine if Mt. Nebo's

use of § 544 is barred by § 546(a)'s statute of limitations. Mt. Nebo argues that it is using § 544 defensively, relying on *Wallick v. Cambio & Universal Properties Group, Inc. (In re Block)*, 259 B.R. 498, 502 (Bankr.D.R.I.2001) for the proposition that the defensive use of § 544(a)(3) is not subject to § 546(a)'s two-year statute of limitations period. Selling Shareholders assert that *Block* represents an impermissible extension of the law and should not be regarded as persuasive authority. In response to Debtors' citation of cases that allow a trustee to defend using § 544 outside of § 546's statute of limitations, Selling Shareholders note that each case cited actually focuses on a claim objection under § 502(d) and not the trustee's § 544 avoidance powers. Selling Shareholders find this distinction important because § 546(a) does not reference § 502(d) claim objections, therefore excluding them from the two year statute of limitations requirement. Because avoidance actions are specifically referenced by § 546(a), Selling Shareholders assert that Debtor cannot use § 544 defensively outside of the two year period. Selling Shareholders further argue that § 544 cannot be used defensively because no claim has been filed against the estate. The present case, assert Selling Shareholders, is an action by one co-owner against the other co-owner for recovery of one-half of the Proceeds.

Selling Shareholders arguments are unpersuasive and I conclude that the present action is essentially an attempt to recover on a claim asserted against the Mt. Nebo estate. Section 101(5)(A) defines a "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, legal, equitable, secured, or unsecured...." The parties agreed by way of a February 16, 2000 stipulated order that the dispute involved "the entitlement to the net proceeds of the sale of the Mt. Nebo Property." (Doc. # 3219, p. 2). The January 10, 2003 resulting trust order found that Selling Shareholders had a right to one-half of the Proceeds. (Doc. # 9917 at 2). This is a "right to payment" that constitutes a claim against Mt. Nebo for one half the Proceeds. The January 21, 2003 order reserved for later disposition Mt. Nebo's assertion that § 544(a)(3) defeats that claim. Thus, Mt. Nebo is using § 544(a)(3) in opposition to a claim against the estate. In that context, Mt. Nebo is using § 544(a)(3) defensively and § 546(a) is not applicable.

In addition to asserting that § 544(a)(3) is being used defensively, Mt. Nebo contends that even assuming that § 546(a) applies, an "action or proceeding" contemplated by that section should be deemed to have been commenced on February 16, 2000. In addition to the January 21, 2000 sale order (Doc. # 3085), as noted above, on February 16, 2000 the Court entered the stipulated order. That order states:

> The [sale motion] and the [Selling Shareholders'] objection thereto constitute a *contested matter* as said term is used in Rule 9014 of the Federal Rules of Bankruptcy Procedure, as to the entitlement to the net proceeds of sale of the Mt. Nebo Property and the interest accrued thereon.

(Doc. # 3219 at 2 (emphasis added)).

According to Mt. Nebo, given the existence of the contested matter there was no need to commence a separate proceeding. Selling Shareholders respond that they did not waive their rights under § 546(a)(3) by that stipulated order. I do not view this as a waiver issue. A contested matter is a proceeding[6] and the February 16, 2000

---

6. The House Report to the Bankruptcy Reform Act of 1978 states:

stipulated order effectively commenced a proceeding, albeit without any specific reference to § 544.

 I now address Selling Shareholders' remaining contention that Mt. Nebo is barred from arguing § 544(a)(3) defensively because it failed to disclose this defense prior to the January 10, 2003 hearing. According to Local Rule 7016–2(d), counsel must submit a pre-trial order addressing the issues to be presented at trial five days before the trial. *See* Del. Bankr.LR 7016–2(d). Defendants must provide the Court and opposing counsel with a "brief statement of what the defendant intends to prove as a defense." *See* Del. Bankr.LR 7016–2(d)(ix). This Court has not had the opportunity to interpret Local Rule 7016–2(d). The United States District Court for the District of Delaware, however, has interpreted D. Del. LR 16.4(d)(9), which contains an identical reporting requirement for litigants. With regard to a pre-trial order, the District Court has stated:

> The court requires parties to identify their factual and legal contentions in the Joint Pre–Trial Order. In addition, the court encourages parties to use "contention" interrogatories to seek the legal contentions made by opposing parties and the factual bases for those legal contentions. The purpose of contention interrogatories and the Joint Pre–Trial Order is to give each party sufficient notice of the opposing party's contentions at trial and an opportunity to respond to those contentions. The court will prevent a party from raising a claim or defense at trial that was not adequately described in a response to a

contention interrogatory or in the Joint Pre–Trial Order.

*Thorn EMI N. Am., Inc. v. Intel Corp.,* 936 F.Supp. 1186, 1191 (D.Del.1996).

The United States Court of Appeals for the Third Circuit has also provided guidance on pretrial order deviations. *See Beissel v. Pittsburgh & Lake Erie R.R. Co.,* 801 F.2d 143, 150 (3d Cir.1986) (noting that "departure from or adherence to the pretrial order is a matter peculiarly within the discretion of the trial judge"). In *Beissel,* the plaintiff sought a new trial, arguing that the district court erred in permitting testimony by a witness who was not included on the pretrial order's witness list. *See id.* The Third Circuit rejected the plaintiff's contention and upheld the district court's decision to permit the testimony. The Third Circuit determined that "abuse of discretion" was the appropriate standard of review and provided the following criteria: "(1) the prejudice or surprise in fact to the opposing party, (2) the ability of the party to cure the prejudice, (3) the extent of disruption of the orderly and efficient trial of the case, and (4) the bad faith or willfulness of the non-complaint party." *See id.* Based on the four criteria identified in *Beissel,* I find that Mt. Nebo is not barred from asserting a § 544 defense, despite its failure to include the defense in the pretrial order. Each of the Third Circuit's four criteria will be briefly addressed in relation to the matter before me.

*Prejudice or Surprise*

I believe that Selling Shareholders will experience significant prejudice by allowing Mt. Nebo to assert the § 544(a)(3) defense. The prejudice suffered by Sell-

---

[A]nything that occurs within a case is a proceeding. Thus, proceeding here is used in its broadest sense, and would encompass what are now called contested matters, adversary proceedings, and plenary actions under the current bankruptcy law. It also includes any disputes relating to administrative matters in a bankruptcy case.

H.R.Rep. No. 95–595, § 1471, at 445 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6401.

ing Shareholders goes back to Debtors' initial sale motion. It was Loewen, not Mt. Nebo that was responsible for selling the Mt. Nebo Property and Loewen would then have to share the Proceeds with Selling Shareholders. Indeed, the Joint Pretrial Order states: "The Debtors contend that the Selling Shareholders merely have a prepetition unsecured claim against [Loewen] for $475,110." The difference between the Mt. Nebo entity and the Loewen entity is important because of how claims against each debtor are addressed in the Plan. Under the Plan, claims against Mt. Nebo and Loewen are classified in Class 11 (unsecured nonpriority claims). (Doc. # 7912 at 25). A claim by Selling Shareholders against Mt. Nebo is a Division H unsecured claim. *See* (Doc. # 7912), Ex. I.A.48, at 11. A claim against Loewen is a Division B unsecured claim. *See id.* at 9. Under the Plan, the recovery for a Division B unsecured claimant is much greater than the recovery for a Division H unsecured claimant. (Doc. # 7912 at 25).

Had Selling Shareholders been put on notice at the outset of this contest that Mt. Nebo would be entitled to defeat their resulting trust interest by the application of § 544(a)(3), they may well have elected to simply assert an unsecured claim against Loewen. Having won the resulting trust argument, Selling Shareholders are now faced with having that result nullified by the late application of § 544(a)(3). In other words, given today's ruling on the § 544(a)(3) issue, Selling Shareholders would have been better off accepting the Debtors' position that Selling Shareholders only had a prepetition unsecured claim against Loewen. Thus, I conclude that Selling Shareholders are prejudiced by this late assertion by Mt. Nebo of the § 544(a)(3) defense.

*Ability to Cure the Prejudice*

At the March 21, 2003 hearing, I questioned Debtors' counsel on the prejudice Selling Shareholders would experience as a result of the differences in the amount recovered under Division B and Division H. Debtor proposed to provide Selling Shareholders with a Division B claim against Loewen *regardless of the resulting trust order.* Counsel suggested this solution as a possible method for curing any prejudice experienced by Selling Shareholders as a result of Debtors' failure to disclose its § 544(a)(3) defense at the outset of the dispute and prior to the trial. I believe that Debtors' proposal eliminates the prejudice Selling Shareholders would otherwise experience by the late application of § 544(a)(3). This proposal places Selling Shareholders in the same position they would have been in had they never pursued the resulting trust position, but rather pursued a claim against Loewen.

*Disruption of the Trial*

Allowing the § 544(a)(3) defense does not disrupt any of the proceedings. Although not disclosed prior to the January 10, 2003 trial, both parties have since had the opportunity, through post-trial briefing and oral argument, to fully apprise the Court of their positions on the applicability of § 544(a)(3). Because of these additional opportunities, I conclude that the course of the legal proceedings have not been disrupted.

*Bad Faith*

Based on Debtors' counsel's uncontested statements at the March 21, 2003 hearing, I cannot find any evidence that Debtors acted in bad faith. Two statements, in particular, lead me to this conclusion. First, Debtors' counsel noted that he was unaware of the *Paradise* decision and had only discovered the case just prior to the January 20, 2003 trial. Second, counsel stated that after discovering the *Paradise*

case he immediately attempted to contact Selling Shareholders' counsel to advise him of the § 544(a)(3) defense. There are no indications that Debtors intentionally or wilfully withheld disclosure of the defense until the day of trial. Without such evidence, I am unwilling to find that Mt. Nebo's counsel was acting in bad-faith in failing to disclose the § 544(a)(3) defense earlier in the case.

## CONCLUSION

For the reasons set forth above, I find that Mt. Nebo is entitled to assert its § 544(a)(3) defense. Although Selling Shareholders experience some prejudice by Mt. Nebo's late assertion of § 544(a)(3), Debtors' proposal that Selling Shareholders receive a Division B claim is adequate to cure the prejudice.

## ORDER

For the reasons set forth in the Court's Memorandum Opinion of this date, it is hereby ordered that:

1. Debtor Mt. Nebo of the Palm Beaches Memorial Gardens, Inc. is entitled to assert a § 544(a)(3) defense to defeat the resulting trust interest (see Doc. # 9917) of the former shareholders of Weinstein Family Services, Inc., Devon Livery, Inc. and Mt. Nebo, through their agents, Norman Cutler and Joel Weinstein ("Selling Shareholders").

2. With respect to debtors' fourth amended joint plan of reorganization (Doc. # 8671), Selling Shareholders shall have an allowed Division B, Class 11 unsecured claim against debtor Loewen Group International, Inc. in the amount of one-half of the proceeds from the sale of the property authorized to be sold by the Court's order of January 21, 2000. (Doc. # 3085).