**In re OCTAGON ROOFING,
d/b/a Western Modified
Roofing, Debtor.**

**Bankruptcy No. 90 B 8656.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

June 24, 1993.

Donald E. Johnson, trustee, Hollis and Johnson, Chicago, IL, for debtor Octagon.

Cheryl L. Urbanski, Jones Day Reavis & Pogue, Chicago, IL, Fordham E. Huffman, Jones Day Reavis & Pogue, Columbus, OH, for Braas Systems.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW CONCERNING THE AMENDED CLAIM OF BRAAS SYSTEM, INC.

JACK B. SCHMETTERER, Bankruptcy Judge.

Braas System, Inc. ("BSI") filed an amended proof of claim against the estate of Debtor Octagon Roofing in which it asserts a $250,000 secured claim plus interest, costs and attorney's fees. Mr. Donald Johnson, the Trustee of Debtor's Chapter 7 estate, has objected to this amended proof of claim, maintaining that BSI is only entitled to an unsecured claim. A trial was held, at which both parties presented stipulated facts and documents and then rested. Having considered these stipulations as well as arguments of counsel, the Court now makes and enters Findings of Fact and Conclusions of Law. Pursuant thereto, by separate order the objection is sustained, the secured claim is disallowed, and BSI's claim is allowed only as an unsecured claim.

### FINDINGS OF FACT

1. On May 10, 1990, an involuntary petition under Chapter 7 of the Bankruptcy Code was filed under 11 U.S.C. § 303 against Octagon Roofing d/b/a Western Modified Roofing. On June 21, 1990, Octagon consented to entry of an order for relief under Chapter 7. On July 9, 1990, the United States Trustee appointed Mr. Donald Johnson to serve as trustee to Octagon's Chapter 7 estate ("Trustee").

2. Prior to this bankruptcy proceeding, Octagon owned a manufacturing facility in Fernley, Nevada where it manufactured and sold roofing materials. Its principal assets were that facility and the equipment, inventory, and other personal proper-

ty located therein (collectively, the "Plant").

3. On October 9, 1990, Trustee Johnson moved to sell the Plant along with the real estate on which it was located. The NBD Park Ridge Bank objected to that motion, claiming a security interest in all those assets. The Trustee responded by filing an Adversary complaint against NBD which attacked the validity of the asserted NBD liens.

4. In Findings of Fact and Conclusions of Law entered on January 3, 1991, *In re Octagon Roofing*, 123 B.R. 583 (Bankr. N.D.Ill.1991), this Court held:

A. The Trustee established the existence of a "bona fide dispute" under 11 U.S.C. § 363(f)(4) as to the validity of NBD's lien;

B. the Trustee could therefore proceed to sell those assets free and clear of NBD's asserted liens; and

C. NBD was entitled to make a credit bid on the property pursuant to 11 U.S.C. § 363(k) so long as it posted an irrevocable letter of credit drawn on another bank in the amount of $416,008.90 and made payable to the Trustee in the event that NBD lost the Adversary and its lien was invalidated.

The facts and discussion contained in that opinion are incorporated into these Findings by reference, and they will not be repeated here.

5. In connection with the Trustee's motion to sell assets, WMR Partners moved for allowance of its secured claim on November 27, 1990. WMR Partners is one of the entities that held a partnership interest in Octagon. The basis for its secured claim was a Deed of Trust given by Octagon in connection with an advance of $525,000 made by WMR Partners to Octagon on June 9, 1989.

6. On December 7, 1990, BSI filed an objection to the motion of WMR Partners. In addition opposing that motion, BSI also sought equitable subordination of the WMR Partners' lien to BSI's own claim, pursuant to 11 U.S.C. § 510(c). BSI also sought to impress a constructive trust in favor of it upon WMR Partners' lien.

Along with this pleading, BSI filed a proof of claim asserting that Debtor owed it $250,000 "plus accrued interest, costs and attorneys fees". Joint Ex. 8. Paragraph 8 of this proof of claim stated that "[n]o security interest is held for this claim." *Id.* The basis for that claim was a term note in the amount of $250,000 executed by Octagon in favor of BSI.

7. By an order entered December 12, 1990, this Court determined that WMR Partners held a perfected, first priority mortgage in the real property where the Plant was located.

8. Ultimately, the assets were sold by the Trustee to NBD via a credit bid. In approving the sale, the Court ordered NBD to pay WMR Partners $613,991.10 plus per diem interest accruing after November 30, 1990. However, WMR Partners was ordered to hold $275,000 of that money in escrow pending resolution of BSI's claim against it. *See* Joint Ex. 15 ("Judgment Order Authorizing Sale of Assets to the NBD Bank Park Ridge").

9. Therefore, after the sale of Octagon's assets was completed, the various parties in this bankruptcy held the following:

A. NBD owned the Plant and the Fernley, Nevada real estate. The purchase price paid by NBD was comprised of (i) $1,190,000 apportioned to the credit bid of NBD's uncontested lien on the personal property located at the plant, (ii) $613,991.90 plus interest paid in cash to WMR Partners apportioned to satisfy WMR Partners' first priority lien on the real estate, and (iii) a $416,008.90 letter of credit which could be drawn upon if the Trustee prevailed in his Adversary against NBD.

B. WMR Partners held $613,991.90 plus interest. However, $275,000 of this fund had to be reserved in the event that BSI prevailed in its equitable subordination claim.

C. BSI held an unsecured claim against Octagon's bankruptcy estate in the amount of $250,000 plus the right to

collect this amount from the reserve held by WMR Partners.

D. The Trustee had gained the satisfaction of the two secured creditors' claims and hence their withdrawal as creditors of Octagon. The Trustee further gained the right to collect against the letter of credit established by NBD in the event that it prevailed in its Adversary.

10. On December 30, 1991, the Court approved an agreement between the Trustee and NBD to settle the Trustee's Adversary suit. In return for dismissing the complaint, NBD paid $202,500 into Octagon's estate.

11. The Trustee characterizes this payment as proceeds from the settlement of the Adversary. However, it is clear that this payment must truly be characterized as proceeds from the sale of the Plant and real estate. NBD agreed to pay a set amount for the assets. The only dispute was whether this amount could be paid via a credit bid or a cash payment to the estate. If the Trustee prevailed in his Adversary, then a portion of NBD's lien would have been invalidated, and thus a part of the purchase price would have to be paid in cash. On the other hand, if NBD prevailed, then its lien would not have been invalidated, and that part of the purchase price would have been paid with a credit bid. The settlement of the Adversary basically split the difference between the Trustee and NBD. As a result of that settlement, $202,500 of cash would be paid to the estate while the remaining amount secured by the letter of credit would go towards the satisfaction of NBD's lien.

12. Therefore, after examining the record of this bankruptcy case, the money paid as a result of the settlement agreement must be construed as proceeds from the sale of the Plant and real estate. Thus, any entity having a security interest in those assets would have a security interest in that $202,500 payment. BSI claims such an interest.

13. As of November 30, 1992, the Trustee held $90,491.15 in two bank accounts. These funds are comprised of (i) the remainder of the funds received on account of the settlement with NBD, (ii) $2,269.25 in proceeds from pre-petition bank accounts, and (iii) $400 from the post-petition sale of a truck owned by Octagon.

14. On May 5, 1992, the deadline for filing claims in this case, BSI amended its proof of claim to assert a secured claim in the same amount of its original proof of claim. BSI claimed to have an equitable lien on "all inventory, accounts receivable, machinery, equipment, buildings, fixtures, and land of Debtor, including the plant in Fernley, Nevada." Joint Ex. 9 (BSI's Amended Proof of Claim).

15. The basis for BSI's equitable lien claim is language in the term note executed by Octagon:

> The undersigned [Octagon] hereby grant to BSI a security interest in all inventory, accounts receivable, machinery, equipment, buildings, fixtures, and land now owned or hereafter acquired by Western Modified Roofing.... The undersigned shall promptly execute and deliver any such mortgages, financing statements, or other instruments reasonably requested by BSI to perfect its security interest in the foregoing collateral.

Joint Ex. 6. BSI argues that it tendered documents necessary to perfect its security interest to Octagon. However, in an alleged violation of the Note, these documents were never executed.

16. BSI's equitable subordination claim was tried before this Court in February of 1992, and judgment was rendered in favor of WMR Partners. *In re Octagon Roofing (Braas System, Inc. v. WMR Partners),* 141 B.R. 968 (Bankr.N.D.Ill.1992). The factual findings contained in that opinion are incorporated into these Findings by reference, and they need not be repeated here. However, it should be pointed out that the documents originally tendered by BSI were not prepared correctly. *Id.* at B.R. 978. An attorney for Octagon wrote to BSI's attorney, stating that his client would execute properly prepared documents. *Id.* However, proper documents were not sent before Octagon's parent entities were

placed in involuntary bankruptcy proceedings. *Id.*

17. BSI alleges that its equitable lien attached to all cash held by the Trustee except for the $400 received from the sale of the truck. However, BSI has stipulated that it does not have a recorded or perfected lien against any assets in Octagon's estate. The Trustee objects to the BSI secured proof of claim, contending that BSI merely holds an unsecured claim. However, if the claim is secured, he seeks to avoid it under 11 U.S.C. § 544(a).

### CONCLUSIONS OF LAW

1. This matter is before the Court pursuant to 28 U.S.C. § 157, and is referred under Local District Court Rule 2.33. The Court has subject matter jurisdiction under 28 U.S.C. § 1334, and this is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

2. Pursuant to Fed.R.Bankr.P. 3001(f), a validly filed proof of claim constitutes *prima facie* evidence of the claim's validity. A rebuttable presumption of validity arises from a properly filed claim. *In re Holm*, 931 F.2d 620, 623 (9th Cir.1991); *In re Fidelity Holding Co., Ltd.*, 837 F.2d 696, 698 (5th Cir.1988). The initial burden falls upon the objector to produce some evidence to overcome this rebuttable presumption. *In re Missionary Baptist Foundation of America, Inc.*, 818 F.2d 1135, 1143 (5th Cir.1987); *In re Stoecker*, 143 B.R. 879, 883 (N.D.Ill.1992). The burden then shifts back to the claimant to produce evidence meeting the objections and establishing the claim. *In re Chapman*, 132 B.R. 132, 143 (Bankr.N.D.Ill. 1991).

3. While the burden of going forward shifts during the claims objection process, the ultimate burden of persuasion is always on the claimant to prove the claimed entitlement. *In re Holm*, 931 F.2d at 623; *In re Chapman*, 132 B.R. at 143. The burden of proving any counterclaims or affirmative defenses is always on the objector. *In re Rasbury*, 130 B.R. 990 (Bankr.N.D.Ala.1991); 3 *Collier on Bankruptcy*, § 502.01[3] (15th Ed.1993).

### BSI's Asserted Lien is Voidable

4. We need not reach the question of whether BSI held an equitable lien under non-bankruptcy law. Clearly, BSI's asserted lien on "all inventory, accounts receivable, machinery, equipment, buildings, fixtures, and land of Debtor, including the plant in Fernley, Nevada" is not perfected since no UCC financing statements were ever executed, and no mortgage was ever recorded with the proper authority in Nevada. Therefore, the lien is voidable by the Trustee under 11 U.S.C. § 544(a).

5. BSI does not dispute that its lien is voidable; it rather argues that the Trustee is unable to take advantage of its "strong-arm" powers under the procedural posture presented by this case. BSI first argues that § 544 can only be invoked through an Adversary complaint. *See* Fed. R.Civ.P. 7001. However, by asserting § 544 in the objection and having clearly sought in this contested proceeding and by requested Findings and Conclusions a determination that BSI's asserted lien is invalid, although not expressly prayed for in the objection, the Trustee's objection became an Adversary proceeding. *See* Fed. R.Bankr.P. 3007 ("If an objection to a claim is joined with a demand for relief of the kind specified in Rule 7001, it becomes an adversary proceeding"). *See also In re Stoecker*, 143 B.R. 118, 127–28 (Bankr. N.D.Ill.1992), *aff'd in part and reversed on other grounds*, 143 B.R. 879 (N.D.Ill. 1992); *In re Chambers*, 131 B.R. 818, 822 (Bankr.N.D.Ill.1991); *In re Jones*, 122 B.R. 246, 250 (W.D.Penn.1990). Thus, a separate filing pursuant to Fed.R.Civ.P. 7001, *et seq.*, was unnecessary.

6. Second, BSI argues that the Trustee's § 544 action should be barred as untimely under 11 U.S.C. § 546(a), which requires that § 544 actions must be commenced within two years of the appointment of a Chapter 7 trustee. This argument has no basis in fact since the Trustee filed his objection on June 16, 1992—less than two years after his appointment on July 9, 1990.

7. Also, "§ 546(a) is limited to proceedings initiated by a trustee; the section does not bar defensive reliance on the trustee's avoiding powers outside the two-year time limit." *In re Coan*, 96 B.R. 828, 831 (Bankr.N.D.Ill.1989) (Sonderby, J.). Thus, even if the Trustee's objection was not timely under § 546(a), he could still raise the issue arguing that the claim must be disallowed pursuant to 11 U.S.C. § 502(d).[1]

8. Judge Squires has explained the rationale behind this view in an extensive and well-reasoned discussion in *Stoecker*, 143 B.R. at 130–38. This Court will not repeat that analysis except to highlight that,

> A transfer is avoidable under section 547 if it meets all the elements contained therein *See* 11 U.S.C. § 547(b). [Creditors] urge the Court to add to section 502(d) the additional element of time found in section 546(a). That section, however, has nothing to do with the essential elements necessary to establish an avoidable preferential transfer.... a literal reading of section 502(d) would permit a trustee to object to payment of a dividend on a claim held by a creditor retaining a preference, so long as that preference meets all of the elements of section 547, whether or not the time limit prescribed by section 546(a) has expired. Significantly, the express language of section 502(d) never once references section 546(a).

*Id.* at 132. This logic applies with equal force to transfers voidable under § 544. Furthermore, this position is supported by the clear weight of authority. *See In re Chase & Sanborn Corp.*, 124 B.R. 368 (Bankr.S.D.Fla.1991); *In re Minichello*, 120 B.R. 17 (Bankr.M.D.Penn.1990); *In re Coan*, 96 B.R. at 831; *In re Tesmetges*, 87 B.R. 263 (Bankr.E.D.N.Y.1988), *aff'd*, 95 B.R. 19 (E.D.N.Y.1988); *In re Larsen*, 80 B.R. 784 (Bankr.E.D.Va.1987); and *In re*

*Mid Atlantic Fund, Inc.*, 60 B.R. 604 (Bankr.S.D.N.Y.1986).

9. BSI argues that § 502(d) only acts to disallow claims that are subject to judgments under § 550. However, the plain language of § 502(d) refutes this argument by stating that "the court shall disallow any claim of any entity from which property is recoverable under section ... 550 ... *or that is a transferee of a transfer avoidable under section ... 544...."* 11 U.S.C. § 502(d) (emphasis added). Thus, a claim may be disallowed not only if the claimant has a § 550 judgment pending against it, but also if that claimant was granted a security interest that is voidable under § 544 or one of the other avoidance sections, even if a judgment pursuant to § 550 has not been entered. BSI cites *Collier on Bankruptcy* for support, but a more complete quotation demonstrates that *Collier* supports the opposite position:

> The import of [§ 502(d)] goes to the allowability of a claim interposed from any entity subject to proceedings by the trustee to ... recover property from the claimant as transferee when the transfer has been set aside pursuant to the exercise of the trustee's avoidance powers under section 550.... *Section 502(d) also disallows a claim by the transferee of the kinds of transfers described by section ... 544 ...., unless the property has been returned to the estate or the transferee has paid the amount of the value of such property. Once the liability of the transferee has been determined, the claim interposed by the transferee will be disallowed unless such transferee gives effect to the judgment flowing from the exercise of the avoiding powers described above.*

*See* 3 *Collier on Bankruptcy* ¶ 502.04 (15th ed. 1993) (emphasis added). Since BSI has not offered any persuasive reason

---

**1.** Section 502(d) of the Bankruptcy Code provides,

> Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title.

to rule otherwise, this Court shall adopt the well-reasoned and well-supported position taken by Judge Squires in *Stoecker*.

10. BSI's asserted lien is voidable under § 544. Thus, BSI's asserted secured proof of claim, if it exists, must be disallowed under § 502(d). *Stoecker*, 143 B.R. at 135–38 (and cases cited therein).

11. The Trustee has raised other arguments in support of his objection to BSI's secured claim. However, since he has prevailed on this point, there is no need to address them.

### *CONCLUSION*

Accordingly, by order entered separately this day, the Trustee's objection to BSI's amended proof of claim is sustained, the BSI secured claim is disallowed as avoided under § 544(a), but will stand and is allowed as an unsecured claim.