**In re ASIA GLOBAL CROSSING, LTD., et al., Debtors.**

No. 02 B 15749(SMB).

United States Bankruptcy Court, S.D. New York.

Nov. 15, 2005.

Golenbock Eiseman Assor Bell & Peskoe LLP, Jonathan L. Flaxer, Adam C. Silverstein, of Counsel, New York City, for Trustee.

Willkie Farr & Gallagher LLP, Alan J. Lipkin, Daniel C. McElhinney, Matthew V. Wargin, of Counsel, New York City, for 360networks Corporation.

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PARTIAL SUMMARY JUDGMENT

STUART M. BERNSTEIN, Chief Judge.

360networks Corporation ("360networks") filed a $100 million proof of claim against the estate of Asia Global Crossing, Ltd. ("Asia Global"). The claim is based on a guaranty (the "Guaranty") of certain obligations of GC Bandwidth, Inc. ("GC Bandwidth") to 360networks. Robert L. Geltzer, Esq., the trustee of Asia Global's estate, filed an objection asserting several defenses to the proof of claim.

In an earlier opinion, *In re Asia Global Crossing, Ltd.*, 326 B.R. 240 (Bankr. S.D.N.Y.2005)(the "Opinion"), the Court granted 360networks' motion for summary judgment to the extent of determining that Asia Global committed an anticipatory breach of its obligations on January 29, 2003, but not before then. 360networks has now moved on two different grounds for partial summary judgment. For the reasons that follow, the motion is granted in part and denied in part.

## BACKGROUND

The Court assumes familiarity with the Opinion which included a full statement of the facts. Those material to the instant motion are not disputed, and may be summarized briefly.

Prior to the November 17, 2002 petition date, Asia Global provided bandwidth and value-added data services to customers through a telecommunications network that spanned Asia, with connections to the United States. Asia Global was an indirect majority owned subsidiary of Global Crossing Ltd. ("Global Crossing"), and the majority owner of GC Bandwidth. Global Crossing and GC Bandwidth filed chapter 11 petitions in this Court on January 28, 2002.

On or about March 30, 2001, GC Bandwidth and 360networks entered into an agreement (the "Master Agreement") pursuant to which GC Bandwidth agreed to deliver telecommunications capacity to 360networks.[1] 360networks prepaid $100 million, and was entitled to order telecommunications capacity in accordance with the Master Agreement. Pursuant to the Guaranty, also dated March 30, 2001,[2] Asia Global guaranteed the payment and performance of GC Bandwidth's obligations under the Master Agreement. The Guaranty only covered telecommunications capacity ordered on or before March 30, 2003.

On October 21, 2002, Global Crossing and various affiliates, including GC Bandwidth, entered into a settlement agreement (the "Settlement Agreement") with 360networks and many of its affiliates. (*See Silverstein Declaration*, Ex. 3.) Among other things, GC Bandwidth and 360networks released each other from any and all claims relating to the Master Agreement. The release expressly excluded Asia Global and any obligations arising under the Guaranty.

On November 17, 2002, Asia Global filed for relief under chapter 11. It simultaneously filed a motion to sell substantially all of its assets to Asia Netcom Corporation Limited (the "ANC Sale"). Pursuant to the terms of the agreement governing the sale, the Guaranty was an "excluded liability" that Asia Netcom would not assume. The ANC Sale was approved by the Court on January 29, 2003, and consummated on March 10, 2003. Three months later, on June 10, 2003, the Court converted Asia Global's chapter 11 case to chapter 7. The United States Trustee appointed Geltzer to act as interim trustee, and he subsequently became permanent trustee by operation of law. *See* 11 U.S.C. § 702(d).

360networks never ordered or received any telecommunications capacity under the Master Agreement. Consequently, it filed a proof of claim against the Asia Global estate in the amount of $100 million based on the Guaranty. (*See Silverstein Declaration*, Ex. 4.) The trustee objected to the claim on several grounds, including that the Guaranty was a fraudulent conveyance and the claim was, therefore, barred under

---

1. A copy of the Master Agreement is attached as Exhibit 1 to the *Declaration of Adam C. Silverstein in Support of Trustee's Objection to 360networks Corporations' Second Motion for Partial Summary Judgement on Chapter 7 Trustee's Objection to Claim Number 5,* (dated Oct. 12, 2005) (*"Silverstein Declaration"*) (ECF Doc. # 670.) Both 360networks and 360Pacific (Bermuda) Ltd., an affiliate of

360networks, were parties to the Master Agreement. The latter subsequently assigned its rights to 360networks. Opinion, 326 B.R. at 243 n. 1. The assignment is immaterial, and this decision ignores the distinction between 360networks and its affiliate.

2. A copy of the Guaranty is attached as Exhibit 2 to the *Silverstein Declaration*.

11 U.S.C. § 502(d),[3] (*Trustee's Reply to Response of 360networks Corporation to First Omnibus Objection to Proofs of Claim*, dated Mar. 8, 2004 [*sic*], at ¶ 21) (ECF Doc. # 574), and that the trustee was entitled to assert GC Bandwidth's "substantial defenses." (*Id.*, ¶ 22.) The current motion seeks partial summary judgment or adjudication arguing, in substance, that these grounds are insufficient as a matter of law.

## DISCUSSION

### A. The 502(d) Objection

Section 502(d) states:

Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title.

■ Section 502(d) prevents the transferee of an avoidable transfer from receiving a distribution, *qua* creditor, unless he first returns the transfer. *Logan v. Credit General Ins. Co. (In re PRS Ins. Group, Inc.)*, 331 B.R. 580, 587 (Bankr.D.Del.2005) ("[T]he purpose of section 502(d) is to ensure compliance with judicial orders by

totally disallowing any claim filed by a creditor that is liable for a preferential or fraudulent transfer—unless the creditor first pays the amount due to the estate."); *In re Mid Atlantic Fund, Inc.*, 60 B.R. 604, 609 (Bankr.S.D.N.Y.1986) (the purpose of § 502(d) is to "preclude entities that have received voidable transfers from sharing in the distribution of assets unless or until the voidable transfer has been returned to the estate.").

■ Section 502(d) is not, however, coextensive with the avoidance provisions available to the trustee. The Bankruptcy Code allows a trustee to avoid both transfers and obligations in appropriate circumstances. *See* 11 U.S.C. §§ 544, 548. If the trustee avoids a "transfer," he can recover the property transferred or the value of the property under § 550. If, on the other hand, he avoids an obligation, the obligation is rendered unenforceable, there is nothing to return and § 550 affords no remedy.

Section 502(d) reflects the same distinction. It disallows the claim of the transferee of an avoidable transfer, but does not speak to the claim of an obligee under an avoidable obligation for the reasons already stated; the avoided obligation is rendered unenforceable, and the underlying claim is subject to disallowance without regard to § 502(d). Moreover, such a provision would be entirely unnecessary. In short, § 502(d) applies to avoidable transfers but does not apply to avoidable obligations.[4] *See In re Revco D.S.*, Case No.

---

**3.** The trustee contends that his objection was not limited to § 502(d); if the Guaranty was a fraudulent conveyance, it is unenforceable and should not be allowed for other reasons aside from § 502(d). (*See Chapter 7 Trustee's Objection to 360networks' Second Motion for Partial Summary Judgment on Trustee's Objection to Claim Number 5 of 360networks*, dated Oct. 12, 2005, at ¶¶ 2, 34–38) (ECF Doc. # 668.) That may be so, but this decision is

limited to the issue raised by 360networks— does § 502(d) bar the allowance of the Guaranty claim.

**4.** *In re Consolidated Capital Equities Corp.*, 157 B.R. 280 (Bankr.N.D.Tex.1993) reached the opposite conclusion, holding that if a guaranty is avoidable under 11 U.S.C. § 544, the Bankruptcy Code requires disallowance of the claim under § 502(d). 157 B.R. at 281.

588–1308, 1990 Bankr.LEXIS 2966, at *67 (Bankr.N.D.Ohio Dec. 17, 1990).

■ The threshold question presented, therefore, is whether the Guaranty is a "transfer" or an "obligation." Section 101(54) of the Bankruptcy Code defines a "transfer" broadly as

> every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption.

The Bankruptcy Code does not, on the other hand, define an "obligation," but it presumably means "[a] formal binding agreement or acknowledgment of a liability to pay a certain amount or to do a certain thing for a particular person or set of persons; esp., a duty arising by contract." Black's Law Dictionary 1104 (8th ed.2004). In most situations, therefore, the "obligation" will impose a "debt" on the obligor, and give a "claim" to the obligee.[5]

In *Barnhill v. Johnson,* 503 U.S. 393, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992), the Supreme Court explored the distinction between a "transfer" and a right to payment, or chose in action, in a context analogous to the present one. There, the debtor delivered a check to the transferee more than 90 days before the petition date, but the check was honored by the drawee bank within the 90 day preference period. *Id.* at 395, 112 S.Ct. 1386. The issue was when the "transfer" occurred for purposes of § 547.

The Supreme Court ruled that the transfer occurred when the check was honored. Focusing on the definition of "transfer," and the distinction between a "transfer" and a chose in action, the Supreme Court stated:

> We acknowledge that § 101(54) adopts an expansive definition of transfer, one that includes "every mode ... absolute or conditional ... of disposing of or parting with property or with an interest in property." There is thus some force in petitioner's claim that he did, in fact, gain something when he received the check. But at most, what petitioner gained was a chose in action against the

---

It does not appear that the parties contested the applicability of § 502(d) in that case. Thus, the decision does not support the trustee's argument. In any event, I reach a different conclusion on the question.

5. Under the Bankruptcy Code, "debt" means "a liability on a claim," 11 U.S.C. § 101(12), and "claim" means

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5). The term "obligation" is broader than "claim" because some "obligations" cannot be discharged by the payment of money. For example, the "obligation" imposed under a court decree to clean up seeping hazardous waste is not a "claim" that would be discharged. *In re Torwico Elec., Inc.,* 8 F.3d 146, 150–51 (3d Cir. 1993) ("Torwico must remedy the situation; the obligations under the Order are not a 'claim.' "), *cert. denied,* 511 U.S. 1046, 114 S.Ct. 1576, 128 L.Ed.2d 219 (1994); *see United States v. LTV Corp. (In re Chateaugay Corp.),* 944 F.2d 997, 1008 (2d Cir.1991) ("[I]f the order, no matter how phrased, requires LTV to take any action that ends or ameliorates current pollution, such an order is not a 'claim.' ")

debtor.[6] Such a right, however, cannot fairly be characterized as a conditional right to "property ... or an interest in property," § 101(54), where the property in this case is the account maintained with the drawee bank. For as noted above, until the moment of honor the debtor retains full control over disposition of the account and the account remains subject to a variety of actions by third parties. To treat petitioner's nebulous right to bring suit as a "conditional transfer" of the property would accomplish a near-limitless expansion of the term "conditional." In the absence of any right against the bank or the account, we think the fairer description is that petitioner had received no interest in debtor's property, not that his interest was "conditional."

Id. at 400–01, 112 S.Ct. 1386.

Like the check in *Barnhill*, the Guaranty gave 360networks a chose in action against Asia Global, conditioned on the default by GC Bandwidth. It did not grant 360networks any interest in or right to Asia Global's property. As such, it was an "obligation" rather than a "transfer" within the meaning of § 101(54). *See Covey v. Commercial Nat'l Bank*, 960 F.2d 657, 661 (7th Cir.1992)("Although a note or guarantee is not a 'transfer' for purposes of 11 U.S.C. § 101(54), ... both note and guaranty are obligations."); *cf. Barnhill*, 503 U.S. at 400 n. 8, 112 S.Ct. 1386 (even if the delivery of a check gave rise to a cause of action against the debtor, it would still not be a "transfer" under the Bankruptcy Code). The avoidability of the Guaranty does not, therefore, provide a basis to invoke § 502(d), and 360networks is entitled to partial summary judgment striking this defense.[7]

## B. GC Bandwidth's Defenses

The trustee also contended that he could assert GC Bandwidth's substantial defenses to 360networks' claim. Although his objection implied that such defenses exist, he never stated what they were. In support of partial summary judgment, 360networks argues that (1) the trustee has failed to identify a single potential defense, and (2) as a result of the Settlement Agreement and exchange of releases, "any defense of Global Bandwidth became irrelevant," and GC Bandwidth's defenses "cannot be available to the Trustee now." (*360networks Corporation's Memorandum of Law in Support of Second Motion for Partial Summary Judgment on Chapter 7 Trustee's Objection to Claim Number 5*, dated Sept. 26, 2005, at 12–13)(ECF Doc. # 663.)

Here, 360networks is not entitled to partial summary judgment. It failed to cite any supporting authority for what are principally legal issues, to wit, (a) whether the trustee's failure to identify specific defenses up to this point justifies the award of partial summary judgment, or (b) whether the settlement with GC Bandwidth, and the exchange of mutual releas-

---

**6.** "Petitioner asserts that upon the date of delivery, he held a cause of action against the debtor.... We think that petitioner may overstate matters a bit; it appears under the U.C.C. that receipt of the check provides a *contingent* cause of action, the contingency being a subsequent dishonoring of the check and a demand to the drawer for payment.... It is unnecessary to resolve this question, however, *for even on petitioner's more expansive assertion his claim under the Bankruptcy*

*Code fails.*" 503 U.S. at 400 n. 8, 112 S.Ct. 1386 (emphasis in final clause added).

**7.** As noted, 360networks' claim based on the Guaranty would be disallowed, irrespective of § 502(d), if the trustee actually avoided the Guaranty. The statute of limitations has, however, run out on the trustee's avoidance claim.

es, rendered GC Bandwidth's defenses irrelevant or unavailable. The Court should not have to perform 360networks' legal research. *Cf.* Bankr.S.D.N.Y. R. 9013–1(b)("Unless the Court orders otherwise, the moving party shall serve and file with any motion ... a memorandum of law setting forth the points and authorities relied on in support of the motion. .... Failure to comply with this subdivision may be deemed sufficient cause for the denial of the motion....")

 If 360networks means to argue that GC Bandwidth did not have any defenses that the trustee can assert, its motion must still be denied. The trustee will bear the burden of proving these defenses at trial. Where, as here, the party requesting summary judgment does not bear the burden of persuasion on the underlying claim, it can satisfy its initial burden in one of two ways. First, it can submit evidence that negates an essential element of the non-moving party's claim. Second, it can show that the non-moving party's evidence is insufficient to establish an essential element of the claim. *Farid v. Smith,* 850 F.2d 917, 924 (2d Cir.1988)(citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)(Brennan, J., dissenting)).

If the movant takes the latter route, it may rely on the pleadings, depositions, answers and admissions to show that the record is bereft of evidence supporting the claim. *See Celotex v. Catrett,* 477 U.S. at 324, 106 S.Ct. 2548. It may not, however, simply assert, in a conclusory manner, that the plaintiff cannot support his claim. *Id.* at 328, 106 S.Ct. 2548 (White, J., concurring); *id.* at 332, 106 S.Ct. 2548 (Brennan, J., dissenting); *Miller v. Genesco, Inc.,* 93 Civ. 0096, 1996 WL 509663, at *2 (S.D.N.Y. Sept. 9, 1996).

Here, 360networks took the latter route. To the extent it argues that there are no defenses to assert, it has failed to point to anything in the record that supports that contention. Instead, it states (or implies), in a conclusory manner, that the trustee has no defenses to assert. Accordingly, this aspect of its motion for partial summary judgment is denied.

The parties are directed to schedule a hearing with chambers for the purpose of discussing further proceedings in connection with the trustee's claim objection.

So ordered.