**In re ASIA GLOBAL CROSSING, LTD., et al., Debtors.**

**No. 02 B 15749(SMB).**

United States Bankruptcy Court, S.D. New York.

June 16, 2006.

Golenbock Eiseman Assor Bell & Peskoe LLP, New York, NY (Jonathan L. Flaxer, Adam C. Silverstein, Andrea B. Schwartz, Of Counsel), for Trustee.

Willkie Farr & Gallagher LLP, New York, NY (Alan J. Lipkin, Matthew V. Wargin, Of Counsel), for 360networks Corporation.

Dechert LLP, New York, NY (Glenn E. Siegel, Of Counsel), for the Bank of New York, as Indenture Trustee.

## OPINION AND ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT

STUART M. BERNSTEIN, Chief Bankruptcy Judge.

Section 273 of the New York Debtor & Creditor Law ("NYDCL"), available to a trustee through 11 U.S.C. § 544(b), permits the trustee to avoid a constructively fraudulent obligation. The issue presented by the pending motion is whether the trustee can object to a proof of claim based on a "fraudulent obligation" where the statute of limitations has run on the avoidance claim and 11 U.S.C. § 502(d) is inapplicable. For the reasons that follow, the Court concludes that the defense is not available to the trustee, and grants the motion by 360networks Corporation ("360networks") for partial summary judgment overruling this aspect of the trustee's objection to its claim.

### BACKGROUND

This is the latest in a series of summary judgment motions made by 360networks or Robert L. Geltzer, Esq., the trustee of the estate of Asia Global Crossing, Ltd. ("Asia Global"), or both, relating to a $100 million proof of claim filed by 360networks. The prior decisions are reported at *In re Asia Global Crossing, Ltd.*, 326 B.R. 240 (Bankr.S.D.N.Y.2005)("*Opinion I* "), *In re Asia Global Crossing, Ltd.*, 332 B.R. 520 (Bankr.S.D.N.Y.2005)("*Opinion II* ") and *In re Asia Global Crossing, Ltd.*, 333 B.R. 199 (Bankr.S.D.N.Y.2005)("*Opinion III* "). I assume familiarity with the prior Opinions, and summarize the facts below.

### A. The Transaction

On or about March 30, 2001, GC Bandwidth, Inc. ("GC Bandwidth") and 360networks entered into a Master Agreement pursuant to which GC Bandwidth agreed to provide telecommunications capacity to 360networks upon demand. 360networks prepaid $100 million for the capacity. On the same day, Asia Global signed a Guaranty of GC Bandwidth's obligations under the Master Agreement. The Guaranty only covered telecommunications capacity ordered on or before March 30, 2003.

On October 21, 2002, Global Crossing and various affiliates, including GC Bandwidth, entered into a settlement agreement (the "Settlement Agreement") with 360networks and many of its affiliates. Among other things, GC Bandwidth and 360networks released each other from any and all claims relating to the Master Agreement. The release expressly excluded Asia Global and any obligations arising under the Guaranty.

On November 17, 2002, Asia Global filed for relief under chapter 11. It simultaneously filed a motion to sell substantially all of its assets to Asia Netcom Corporation Limited (the "ANC Sale"). The Guaranty was an "excluded liability" that Asia Netcom did not agree to assume. The ANC Sale was approved by the Court on January 29, 2003, and consummated on March 10, 2003. Three months later, on June 10, 2003, the Court converted Asia Global's chapter 11 case to chapter 7, and Geltzer became the trustee.

### B. The Prior Proceedings

In February 2003, 360networks filed a $100 million proof of claim based on the Guaranty, and the trustee objected on several grounds. The initial skirmish involved the parties' cross-motions for summary judgment. The trustee argued that 360networks never ordered telecommunications capacity in accordance with the Master Agreement, and hence, failed to satisfy the condition precedent to liability under the Master Agreement and the Guaranty. 360networks countered that

Asia Global had committed various anticipatory breaches that excused the ordering requirement.

In *Opinion I*, the Court denied the trustee's motion and granted 360networks' motion to the extent of deciding that Asia Global committed an anticipatory breach on January 29, 2003—but not before then. 326 B.R. at 256. The Court also held that 360networks would have to prove at trial that but for the breach, it was ready, willing and able to perform (*i.e.* demand telecommunications capacity) during the two months remaining before the Guaranty expired. *Id.* at 257.

Both parties cross-moved for reargument. In *Opinion II*, the Court denied the trustee's motion, and granted 360networks' motion in part, but adhered to its original decision.

*Opinion III* dealt with an issue that bears directly on the current dispute. The trustee contended that the Guaranty was a fraudulent obligation under the NYDCL.[1] Acknowledging that the statute of limitations had run on his avoidance claim, the trustee nevertheless objected to the Guaranty claim under 11 U.S.C. § 502(d), which states:

> Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or trans-

feree is liable under section 522(i), 542, 543, 550, or 553 of this title.

*Opinion III* held that § 502(d) applied to avoidable "transfers" but did not apply to avoidable "obligations." Hence, it did not provide a basis to object to 360networks' claim. 333 B.R. at 204.

## C. This Motion

At some point in these proceedings, the trustee refined his fraudulent conveyance argument to include what he describes as a "common law" fraudulent conveyance defense. In substance, he contends that even though his affirmative avoidance claim is time-barred and § 502(d) does not apply, he can still defeat the claim because it is based on an otherwise avoidable fraudulent obligation.

360networks has moved for partial summary judgment striking this part of the claim objection. It offers several reasons why the defense is unavailable under bankruptcy and non-bankruptcy law. In addition, 360networks contends that a prior release contained in a confirmed Canadian bankruptcy plan means that no unsecured creditor existed on the Asia Global petition date that could have sued 360networks to avoid the obligation, as required under 11 U.S.C. § 544(b). Finally, 360networks asserts that the defense is barred by the doctrines of laches and estoppel. In light of the disposition of the motion, I do not need to reach the latter two arguments.

## DISCUSSION

### A. Introduction

■ Section 502 of the Bankruptcy Code governs the allowance of claims and

---

1. Section 273 of the NYDCL provides:
 Every conveyance made *and every obligation incurred* by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual

intent if the conveyance is made or the obligation is incurred without a fair consideration.
(Emphasis added).

interests. A filed proof of claim is deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a).[2] Section 502(b) sets out the grounds for objection, and provides, in pertinent part, as follows:

.... [I]f such objection to a claim is made, the court, after notice and a hearing, ... shall allow such claim ... in such amount, except to the extent that—

(1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured.

Section 502(b)(1) reflects the general rule that the trustee, as statutory successor to the debtor, may assert the personal defenses that belonged to the debtor under non-bankruptcy law.[3] 4 ALAN R. RESNICK & HENRY J. SOMMER, COLLIER ON BANKRUPTCY ¶ 502.03[2][b], at 502–22 (15th ed. rev.2006)("COLLIER").

 Section 502(d), quoted *supra,* is an exception to this general rule. It grants the trustee additional defenses that the debtor could not have asserted under non-bankruptcy law and § 502(b). For example, a fraudulent conveyance claim is a creditor's remedy that is unavailable to the debtor-transferor under non-bankruptcy law. *See Kittay v. Landegger (In re Hag-erstown Fiber Ltd. P'ship* ), 277 B.R. 181, 202 (Bankr.S.D.N.Y.2002). Section 544(b) nevertheless grants this creditor's remedy to the trustee, and permits him to avoid a transfer or obligation that a creditor could have avoided under non-bankruptcy law.[4] In addition, § 502(d) disallows the claim of a creditor that received a *transfer* avoidable under chapter 5 of the Bankruptcy Code unless the creditor returns the transfer to the estate. Finally, the trustee can invoke § 502(d) even if the statute of limitations contained in 11 U.S.C. § 546(a)(1)[5] has expired on the underlying avoidance claim. *E.g., United States Lines, Inc. v. United States (In re McLean Indus., Inc.*), 196 B.R. 670, 675–76 (S.D.N.Y.1996); *In re Metiom, Inc.,* 301 B.R. 634, 641 (Bankr. S.D.N.Y.2003); *In re Mid Atlantic Fund, Inc.,* 60 B.R. 604, 609–11 (Bankr.S.D.N.Y. 1986); *see Maxwell Commc'n Corp. v. Societe Generale,* 93 F.3d 1036, 1054 (2d Cir. 1996).

As noted, *Opinion III* addressed the trustee's attempt to use § 502(d) to disallow 360networks' claim. The trustee contended that the Guaranty was a fraudulent obligation, and although the statute of limitations had run on his avoidance claim, he could nevertheless assert the claim as a defense under § 502(d). There, I concluded that the words of § 502(d) limited its

---

**2.** Section 502(a) states:

A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest ... objects.

**3.** Section 558, which is not limited to claims objections, is to the same effect. It states:

The estate shall have the benefit of any defense available to the debtor as against any entity other than the estate, including statutes of limitation, statutes of frauds, usury, and other personal defenses. A waiver of any such defense by the debtor after the commencement of the case does not bind the estate.

**4.** The trustee is granted additional avoiding powers under chapter 5 of the Bankruptcy Code.

**5.** Section 546(a) states:
An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of—
(1) the later of—(A) 2 years after the entry of the order for relief; or (B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or
(2) the time the case is closed or dismissed.

application to avoidable transfers. Hence, it did not provide a statutory basis to defeat 360networks' claim.

## C. The "Common Law" Fraudulent Conveyance Defense

The trustee now contends, in substance, that even if his defense is barred under the Bankruptcy Code, he can still assert it under the common law. The argument has some superficial appeal, but does not withstand analysis. Contract law and fraudulent conveyance law view the adequacy of consideration differently, and the differences explain why a constructively fraudulent obligation is enforceable under the common law.

Under NYDCL § 273, a constructive fraudulent conveyance occurs when an insolvent debtor transfers property or incurs an obligation without "fair consideration."

> Fair consideration is given for property, or obligation,
>
> a. When in exchange for such property, or obligation, as a *fair equivalent* therefor, and in good faith, property is conveyed or an antecedent debt is satisfied. . . .

NYDCL § 272 (emphasis added). Thus, the law governing constructive fraudulent conveyances measures the relative values of the exchange.

■ In contrast, contract law does not concern itself with the relative value of what the parties exchanged, and will enforce a bad bargain.

> It is an elementary and oft quoted principle that the law will not inquire into the adequacy of consideration so long as the consideration is otherwise valid to support a promise. By this is meant that so long as the requirement of a bargained-for benefit or detriment is satisfied, the fact that the relative value or worth of the exchange is unequal is

irrelevant so that anything which fulfills the requirement of consideration will support a promise, regardless of the comparative value of the consideration and of the thing promised. The rule is almost as old as the doctrine of consideration itself.

3 RICHARD A. LORD, WILLISTON ON CONTRACTS § 7:21, at 383–386 (4th ed. 1992)("WILLISTON"); *accord Apfel v. Prudential–Bache Secs. Inc.*, 81 N.Y.2d 470, 600 N.Y.S.2d 433, 616 N.E.2d 1095, 1097 (1993)("Under the traditional principles of contract law, the parties to a contract are free to make their bargain, even if the consideration exchanged is grossly unequal or of dubious value. . . . Absent fraud or unconscionability, the adequacy of consideration is not a proper subject for judicial scrutiny") (citations omitted); *Mencher v. Weiss*, 306 N.Y. 1, 114 N.E.2d 177 (1953) ("The slightest consideration is sufficient to support the most onerous obligation; the inadequacy, as has been well said, is for the parties to consider at the time of making the agreement, and not for the court when it is sought to be enforced. It is competent for the parties to make whatever contracts they may please, so long as there is no fraud or deception or infringement of law.") (citations and internal quotation marks omitted); *Mandel v. Liebman*, 303 N.Y. 88, 100 N.E.2d 149, 152 (1951)("If a person chooses to make an extravagant promise for an inadequate consideration, it is his own affair. It was long ago said that when a thing is to be done by the plaintiff, be it never so small, this is a sufficient consideration to ground an action.") (citations and internal quotation marks omitted).

■ In addition, under contract law, a contract is supported by consideration even if the consideration flows solely to a third party. *See Mencher v. Weiss*, 114 N.E.2d at 181("[I]t is fundamental that a

benefit flowing to a third person or legal entity constitutes a sufficient consideration for the promise of another."); RESTATE-MENT (SECOND) OF CONTRACTS § 71, cmt. e (1981) ("It matters not from whom the consideration moves or to whom it goes. If it is bargained for and given in exchange for the promise, the promise is not gratuitous."); *see generally* 3 WILLISTON § 7:5, at 60 ("It is well settled that a detriment suffered by the promisee at the promisor's request and as the price for the promise is sufficient, despite the fact that the promisor is not benefited as well.")

■ Under the NYDCL, however, the transferor must receive "fair consideration;" consideration received by a third party does not count unless the transferor receives an indirect benefit:

> A debtor can receive "fair consideration" indirectly through a benefit conferred on a third party provided that "the value of the benefit received by the debtor approximates the value of the property or obligation he has given up." *Rubin v. Manufacturers Hanover Trust Co.*, 661 F.2d 979, 991–92 (2d Cir.1981). Indirect benefits may include consideration flowing from the debtor to the guarantor, synergy, increased access to capital, safeguarding a source of supply and protecting customer relationships. *Leibowitz v. Parkway Bank & Trust Co. (In re Image Worldwide, Ltd.)*, 139 F.3d

574, 578–79 (7th Cir.1998). The indirect benefit from a guaranty will not be recognized unless it is "fairly concrete." *Id.* at 578.

*Silverman v. Nirvana Restaurant, Inc. (In re Nirvana Restaurant, Inc.)*, 337 B.R. 495, 502 (Bankr.S.D.N.Y.2006).

■ The current case illustrates these principles. The Guaranty was supported by sufficient consideration under contract law in the form of the $100 million payment to GC Bandwidth. Asia Global's obligation was, therefore, enforceable under the common law, even if Asia Global did not receive "fair consideration" and was insolvent when it signed the Guaranty.

■ Accordingly, the constructively fraudulent nature of the Guaranty does not render it unenforceable under non-bankruptcy law.[6] Since Asia Global could not have asserted it as a defense to the Guaranty, the trustee cannot assert it under § 502(b)(1) as a reason to disallow 360networks' claim. Furthermore, the trustee cannot assert the avoidance claim as a defense to the claim under § 502(d) for the reasons discussed above and in *Opinion III*. In short, the trustee lacks a basis under bankruptcy or non-bankruptcy law to object to the Guaranty on the ground that it was a constructively fraudulent obligation within the meaning of the NYDCL and 11 U.S.C. § 544(b).[7]

---

**6.** The trustee cites *Snyder v. United States*, No. 88 CV 2136(RR), 1995 WL 724529 (E.D.N.Y. July 26, 1995) as an example of "black letter law that a fraudulent conveyance is an affirmative defense to enforcement of an instrument." (*Chapter 7 Trustee's Objection To 360networks' Third Motion For Partial Summary Judgment On Trustee's Objection To Claim Number 5 Of 360networks*, May 12, 2006, at 15 n. 8)(ECF Doc. # 775.) In *Snyder*, a non-bankruptcy case, a taxpayer transferred property to his wife at a time when he was contingently liable for unpaid taxes. The Government filed a tax lien after the transfer, and the wife brought an action to quiet title.

The Government asserted the affirmative defense that the transfer was fraudulent.

*Snyder* is distinguishable from the present case. In *Snyder*, the Government was simply exercising the right of a creditor to set aside a fraudulent transfer under the NYDCL. In fact, although the fraudulent transfer was asserted as an affirmative defense rather than as a counterclaim, the Court nevertheless set the transfer aside. *Snyder*, 1995 WL 724529 at *12.

**7.** This conclusion is also buttressed by the principle that statutes should not be interpre-

## D. The Trustee's Authorities

The trustee has cited several cases that recognized the trustee's right to assert avoidance claims defensively after the statute of limitations had run. Because these cases involved avoidable transfers, their results can be explained by the courts' express or implied reliance on § 502(d). For example, in *In re Loewen Group Int'l*, 292 B.R. 522 (Bankr.D.Del.2003), the debtor exercised an option to purchase real property, using funds provided in equal amounts by third parties and an affiliated debtor. When the debtor sought to sell the property during the bankruptcy, the third parties argued that the debtor held bare legal title and that they and the affiliated debtor held equitable title as the beneficiaries of a resulting trust. They were, therefore, entitled to 50% of the proceeds. The court authorized the sale, but directed the debtor to escrow the proceeds. *Id.* at 524–25.

Following an evidentiary hearing, the court concluded that the debtor held the property for the benefit of the affiliated debtor and the third parties in a resulting trust. *Id.* at 525. The debtor responded that its strong arm powers under § 544(a)(3)[8] nevertheless granted it superior rights to proceeds (*i.e.*, cut off the resulting trust), and the debtor could as-

sert its rights even though the statute of limitations had run on the avoidance claim. *See id.* at 525–26. The third parties responded that each case cited by the debtor in support of the defensive use of a time-barred avoidance claim involved a claim objection under § 502(d). As the dispute did not involve a claim objection, § 502(d) did not apply. *See id.* at 528.

Agreeing with the debtor, the bankruptcy court concluded that the statute of limitations did not bar the defensive use of § 544(a)(3). The court equated the third parties' action—to recover 50% of the sale proceeds—as "essentially an attempt to recover on a claim asserted against the [debtor's] estate." *Id.* "Thus, [the debtor] is using § 544(a)(3) in opposition to a claim against the estate. In that context, [the debtor] is using § 544(a)(3) defensively and § 546(a) is not applicable." *Id.* In other words, the estate was asserting the avoidance claim defensively within the parameters of § 502(d).

*Wallick v. Cambio (In re Block)*, 259 B.R. 498 (Bankr.D.R.I.2001) reached the same result in an analogous situation. There, the alleged owner of real property titled in the debtor's name held an unrecorded deed evidencing its ownership, and argued that it was the equitable owner of the property. It commenced an adversary

---

tated in a manner that renders any provision superfluous. *Hibbs v. Winn*, 542 U.S. 88, 89, 124 S.Ct. 2276, 159 L.Ed.2d 172 (2004); *Doe v. Chao*, 540 U.S. 614, 630–31, 124 S.Ct. 1204, 157 L.Ed.2d 1122 (2004); 2A Norman J. Singer, Sutherland Statutory Construction, § 46:06 at 181–192 (6th ed.2000). Under the trustee's interpretation, he could bring a timely action to avoid a fraudulent obligation, or achieve the same result, after the statute of limitations had run, by alleging, as a defense, that the underlying obligation was unenforceable because it was a fraudulent obligation. The interpretation would render the statute of limitations superfluous as to this type of avoidance claim.

**8.** Section 544(a)(3) states, in pertinent part:

The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

. . . . .

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

proceeding to declare its superior rights, and the debtor asserted a time-barred avoidance claim under § 544(a)(3) as a defense to the plaintiff's claim. *Id.* at 500. Relying primarily on *In re Octagon Roofing*, 156 B.R. 214 (Bankr.N.D.Ill.1993), which, in turn, relied on § 502(d), *see id.* at 219, the court concluded, with only limited discussion, that § 546 did not bar the defensive use of the strong arm powers granted under § 544(a)(3). *Block*, 259 B.R. at 502.[9]

Two other cases cited by the trustee involved preference claims under § 547. In *In re Badger Lines, Inc.*, 206 B.R. 521 (E.D.Wis.1997), *rev'd on other grounds*, 202 F.3d 945 (7th Cir.2000), a non-bankruptcy receiver filed a turnover motion, contending that he held a lien on estate property that was superior to the estate's interest. *Id.* at 522. Both the bankruptcy court and the district court concluded that the receiver had acquired his lien within 90 days of the petition date, rendering it a preference under § 547(b).[10] *See id.* at 527. In addition, the expiration of the statute of limitations under § 546(a) did not bar the trustee from asserting the preference defensively, essentially to avoid the receiver's lien. Citing § 502(d) cases, the court ruled that "[t]he clear weight of authority permits defensive reliance on the trustee's avoiding powers outside the two-year time limit under § 546(a)." *Id.*[11]

Finally, in *Kronz v. Cech (In re Romano )*, 175 B.R. 585 (Bankr.W.D.Pa.1994),

mortgagees commenced an adversary proceeding to determine the nature, extent and validity of their interests in the estate's real property. The trustee counterclaimed to avoid the mortgage lien as a preference, *id.* at 591, and the mortgagees objected to the counterclaim on the ground that the statute of limitations had expired on the avoidance claim. *Id.* at 595. Relying on the doctrine of recoupment, the court concluded that the preference claim and the mortgage lien arose out of the same transaction, and the trustee could, therefore, assert it defensively after the statute of limitations had expired. *Id.* at 595–96.

*Loewen's* explicit approach supplies the clearest rationale for the results in these cases. Any time a third party seeks to recover property of the estate, whether through a proof of claim, a turnover proceeding or the assertion of a superior interest in estate property, the third party is asserting a "claim" within the meaning of § 502(a). In those instances, the trustee can assert the estate's rights under § 502(d). This construction is consistent with the overarching principle of equality of distribution, and the specific purpose of § 502(d).

Furthermore, the cases involving the trustee's reliance on his strong arm powers under § 544(a) can be explained without regard to § 502(d). Section 544(a)(3) gives the trustee a status as well as an avoiding power. He is deemed to have the

---

9. The court also cited *In re Badger Lines, Inc.*, 206 B.R. 521 (E.D.Wis.1997), which is discussed in the text, *infra.*

10. The Seventh Circuit ultimately reversed this conclusion. *In re Badger Lines, Inc.*, 202 F.3d 945, 946 (7th Cir.2000).

11. One of the cases cited by the *Badger* court, *In re Coan*, 96 B.R. 828 (Bankr.N.D.Ill.1989), did not rely on § 502(d). There, a secured party brought a turnover action against the

estate, and the trustee challenged the validity of the lien as a preference. The court initially ruled that the trustee had asserted the avoidance defense within the time specified in § 546(a), and it was therefore timely. *Id.* at 831. The court further concluded that § 546(a) did not bar the defensive use of an avoidance claim. *Id.* The court cited, as support, *In re Mid Atlantic Fund, Inc.*, 60 B.R. 604 (Bankr.S.D.N.Y.1986). *Mid Atlantic* involved § 502(d).

rights and powers of a *bona fide* purchaser, which he retains throughout the case and without regard to § 546(a)(1). A *bona fide* purchaser may assert his status as a defense under non-bankruptcy law in actions involving the title to or interest in real estate. *See* 77 AM.JUR.2D, *VENDORS & PURCHASERS* § 427 (Westlaw Apr. 2006). The trustee's use of § 544(a)(3) to defend against turnover claims, or proceedings to quiet title in property of the estate, essentially involves the assertion of this common law defense.

This case does not involve the Asia Global trustee's strong arm powers under § 544(a), and he cannot rely on § 502(d). Furthermore, the doctrine of recoupment is inapplicable because 360networks does not owe Asia Global anything in connection with the transaction giving rise to the Guaranty. *See Malinowski v. New York State Dep't of Labor (In re Malinowski )*, 156 F.3d 131, 133 (2d Cir.1998)("[T]he typical situation in which equitable recoupment can be invoked involves a credit and debt arising out of a transaction *for the same goods or services* ")(quoting *Newbery Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d 1392, 1402–03 (9th Cir.1996)). Accordingly, his authorities do not support the use of a time-barred right to avoid a fraudulent obligation as a defense to the underlying claim.

## CONCLUSION

The trustee cannot object to 360networks' claim on the basis that the Guaranty was a constructively fraudulent obligation within the meaning of the NYDCL. Accordingly, 360networks' motion for partial summary judgment is granted on this issue.

So ordered.