## In re MORTGAGE LENDERS NETWORK, USA, INC., Debtor.

## Mortgage Lenders Network USA, Inc., Plaintiff,

v.

## Wells Fargo Bank, National Association, and Wells Fargo Home Mortgage, Inc., Defendants.

Bankruptcy No. 07–10146 (PJW).
Adversary No. 07–51683 (PJW).

United States Bankruptcy Court, D. Delaware.

Dec. 11, 2007.

Laura Davis Jones, Brad R. Godshall, Alan Kornfeld, Joshua M. Fried, Timothy P. Cairns, Pachulski Stang Ziehl & Jones LLP, Wilmington, DE, for Debtor/Plaintiff.

Noel C. Burnham, Montgomery, McCracken, Walker & Rhoads, LLP, Wilmington, DE, Stephen M. Mertz, Charles F. Webber, Faegre & Benson LLP, Minneapolis, MN, for Defendants.

## MEMORANDUM OPINION

PETER J. WALSH, Bankruptcy Judge.

This opinion is with respect to the motion (Adv.Doc. # 4) of defendants Wells

Fargo Bank, National Association and Wells Fargo Home Mortgage, Inc. (collectively "Wells Fargo") to dismiss plaintiff Mortgage Lenders Network USA, Inc.'s ("MLN") second claim for relief in the above captioned adversary proceeding. The motion seeks dismissal under Fed. R. Bankr.P. 7012 and Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted. For the reasons stated below, the Court will treat the motion as a motion for summary judgment and grant relief in favor of Wells Fargo.

## Background

MLN is a corporation that originated and purchased residential mortgage loans. (Adv.Doc. # 9, p. 4). On February 5, 2007, it petitioned for relief under chapter 11 of title 11 of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* Prior to filing its petition, MLN had accumulated pools of mortgage loans and sold them to three trusts: (1) Mortgage Lenders Network Equity Loan Trust 1999–1; (2) Mortgage Lenders Network Home Equity Loan Trust 1999–2; and (3) Mortgage Lenders Network Home Equity Loan Trust, Series 2000–1 (collectively "Trusts"). In addition to the sales, MLN also entered into contracts with each member of the Trusts to be the mortgage servicer for the Trusts ("Service Agreements"), effective from the date of the sale through post-petition. (Adv.Doc. # 1, ¶ 10). Wells Fargo was the indentured trustee for the 1999–1 Trust and the 1999–2 Trust, and the trustee of the 2000–1 Trust. (Adv.Doc. # 9, p. 5). In these capacities, Wells Fargo represent the interest of the holders of the asset-backed notes. (Adv.Doc. # 9, p. 5).

MLN had a number of duties as the servicer. (*See* Adv.Doc. # 9, ex. A, B, C). The relevant ones are: (a) receive and process mortgage payments from the underlying borrowers, (b) attempt to collect past-due payments from borrowers, (c)

foreclose on mortgage loans that had gone into default. (Adv.Doc. # 9, p. 6).

The Servicing Agreements contain numerous provisions stating that the Trusts, and not MLN, owned the mortgages, and that MLN was to deal with the mortgages on behalf of the Trusts. The following are examples of those provisions which constitute an express trust or agency relationship between MLN and the Trusts:

• Section 8.08 of the 1999–1 Servicing Agreement and the 1999–2 Servicing Agreement provides that MLN "acknowledge[s] that [*Wells Fargo*] remains the *sole and absolute record holder of the Mortgage Loans and all rights related thereto.*"

• Section 2.03 of the 2000–1 Servicing Agreement provides that "the parties hereto intend that this document operate to *transfer the entire equitable ownership interest* in and to each Mortgage Loan *to [Wells Fargo]* on behalf of the Certificateholders."

• Section 2.05 of the 1999–1 Servicing Agreement and the 1999–2 Servicing Agreement governed MLN's responsibilities in the event of a default in one of the mortgage loans owned by the 1999–1 Trust or the 1999–2 Trust. That section provides that "[MLN] on behalf of and as the agent of [Wells Fargo], shall foreclose upon or otherwise comparably convert the ownership of Mortgaged Properties securing such of the Mortgage Loans as come into and continue in default . . . into the name of [Wells Fargo] . . . ." The same section goes on to provide that in the event that title to any of the underlying mortgaged properties was acquired through foreclosure or deed in lieu of foreclosure, "the deed or certificate of sale shall be issued to [Wells Fargo], or to its nominee, on

behalf of the Noteholders" and that MLN *"shall manage, conserve, protect and operate each such [foreclosed property] for the Noteholders solely for the purpose of its prompt disposition and sale."*

- Section 3.01(b)(i) of the 2000–1 Servicing Agreement similarly provides that *when MLN foreclosed on properties*, it was "to hold or cause to be *held title to such properties, on behalf of the Trust and Certificateholders."*

- Section 3.22(a) of the 2000–1 Servicing Agreement provides that "[t]he deed or certificate of sale of any REO Property [i.e., real estate obtained through foreclosure or deed-in-lieu] shall be taken in the name of the Trust on behalf of the Certificateholders." That section goes on to provide that *"[MLN] shall manage, conserve, protect and operate each REO property for the Certificateholders . . . ."*

- Section 2.14 of the 1999–1 Servicing Agreement and the 1999–2 Servicing Agreement provides that MLN "acknowledge[d] and agree[d] that it *shall service and administer the Mortgage Loans and any REO Properties . . . for the benefit of the Noteholders"* for whom Wells Fargo *acts as indenture trustee.*

- In virtually identical language, Section 9.03 of the 2000–1 Servicing Agreement provides that MLN "acknowledge[d] and agree[d] that it shall service and administer the Mortgage Loans and any REO Properties for the benefit of the Certificateholders" for whom Wells Fargo acts as trustee.

(Doc. # 9, pp. 7–8)(emphasis added).

Pursuant to the Servicing Agreements, MLN serviced properties for the Trusts for which Wells Fargo acts as trustee and indenture trustee over an eight year period leading up to the petition date. During that period MLN foreclosed on numerous mortgaged properties owned by the Trusts. MLN titled the foreclosed property in MLN's name.[1] (Adv.Doc. # 37, p. 1). MLN then attempted to resell the properties that MLN foreclosed in its name. (Adv.Doc. # 37, p. 1). Upon the sale, MLN would pass through to Wells Fargo an amount equal to the proceeds received from the sale, less any closing cost and amounts previously advanced by MLN for foreclosure cost and other servicing-related advances. (Adv.Doc. # 37, p. 1). On some occasions third party buyers bought properties at the foreclosure sales. If a foreclosure sale to a third party occurred, MLN would pass through to Wells Fargo an amount equal to the proceeds received from the sale, less any closing costs and amounts previously advanced by MLN for foreclosure cost and other servicing-related advances. (Adv.Doc. # 37, pp. 1–2).

This foreclosure procedure obviously resulted in some time lag between a foreclosure taken in MLN's name and a sale of the property which would produce net proceeds to be turned over to the Trusts. As a result, when MLN filed its petition in bankruptcy, it held 26 foreclosed properties ("Foreclosed Properties") in its name. In its second claim for relief, MLN seeks a determination that the Trusts have no rights in the Foreclosed Properties.

---

1. In its complaint, MLN asserts that it took the properties in its name pursuant to an understanding between MLN and Wells Fargo. Wells Fargo challenges this fact and asserts that it did not consent to having foreclosed properties in MLN's name. For purposes of my ruling here, I need not resolve that conflict.

MLN's second claim for relief is titled "Avoidance of Liens Pursuant to 11 U.S.C. § 544." The relevant part of § 544(a) here is § 544(a)(3) which deals with real property:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

\* \* \*

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

MLN alleges that the Trusts hold unrecorded ownership rights on the Foreclosed Properties, and that because a bona fide purchaser of real property would be able to buy the Foreclosed Properties free of the Trusts' unrecorded ownership interest so too may MLN take full title to the Foreclosed Properties free of the Trusts' unrecorded ownership interest.[2]

## Standard of Review

On two occasions prior to this opinion I made inquiry of counsel for both parties seeking additional factual representations. Counsel responded to those inquiries by furnishing additional information. Thus, matters outside the pleadings are before me and pursuant to Rule 12(b)(6) the motion will be treated as one for summary judgment and disposed of as provided in Rule 56.

Pursuant to Rule 56(c), a party is entitled to summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In deciding motions for summary judgment, a court must view all facts in the light most favorable to the nonmoving party. *Morton Int'l, Inc. v. A.E. Staley Mfg. Co.*, 343 F.3d 669, 680 (3d Cir.2003).

## Discussion

■ There are no disputed material facts. This matter involves the application and interplay of three sections of the Bankruptcy Code.

Wells Fargo argues that MLN cannot benefit from § 544(a)(3) because Wells Fargo's equitable interest is entitled to the protection afforded by § 541(d). Section 541(d) provides:

Property in which the debtor holds, as of the commencement of the case, only legal title and not a equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest, becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

---

**2.** In its complaint, MLN referred to the Trusts' interests as "unrecorded lien" interests. As a result of an inquiry made by the Court, MLN now advises that its interest is that of bona fide purchaser of real estate free and clear of the Trusts' "unrecorded ownership interest" as opposed to an "unrecorded lien interest". (Adv.Doc. # 27, pp. 2–3).

MLN responds to Wells Fargo's position by arguing that § 541(d) is expressly limited to what would be estate property under either § 541(a)(1) or § 541(a)(2), but that the Foreclosed Properties are avoided properties brought into the estate under § 541(a)(3). MLN succinctly states its position as follows:

> As indicated, § 541(d) *only* excludes from the estate property in which a debtor holds only "legal title" that is brought into the estate under §§ 544(a)(1) [3] and 544(a)(2) [4]. Avoided property, however, is brought into the estate under § 541(a)(3), rather than § 541(a)(1) or § 541(a)(2).

(Adv.Doc.# 18, p. 11).

I do not agree because I do not believe the Foreclosed Properties are "avoided" properties. Section 541(a)(3) brings into the estate "[a]ny interest in property that the *trustee recovers* under section 329(b), 363(n), 543, 550, 553, or 723 of this title." (emphasis added). All of the sections identified in § 541(a)(3) relate to property coming into the estate following the petition as the result of action taken by the court or a trustee: § 329(b)—return of excess attorney compensation; § 363(n)—avoidance of a sale of property where "the sale price was controlled by an agreement among potential bidders at such sale"; § 543—turnover of property held by a custodian; § 550—recovery of property or the value thereof where a transfer is avoided; § 553—trustee's postpetition setoff rights; § 723—rights of partnership trustee against general partners. Notably, § 541(a)(3) does not identify § 544 as being involved. The only relevant section here is § 550. Section 550(a) provides: "Except as otherwise provided in this section, to the extent that a *transfer is avoid-*

*ed under section 544,* 545, 547, 548, 549, 553(b), or 724(a) of this title, the *trustee may recover,* for the benefit of the estate, the *property transferred* ..." to identified transferees. (emphasis added). Pursuant to § 1107(a), MLN, as a debtor in possession, has the powers of a trustee, but it is not here seeking to avoid a pre-petition transfer of property.

MLN identifies § 544(a)(3) as the basis for its entitlement to the Foreclosed Properties. But, § 544(a)(3) is not being used here to recover pre-petition transfers of the property. While § 544(a) is not a model of clarity, I read its application here to say: "The trustee shall have ... the rights and powers of ... a bona fide purchaser of real property ... from the debtor...." *Colliers* states this application as follows:

> Pursuant to that subsection, the trustee is given the rights and powers of a bona fide purchaser of real property from the debtor if at the time of the commencement of the case a hypothetical buyer could have obtained bona fide purchaser status, so the trustee can avoid any liens or conveyances that a bona fide purchaser could avoid. As a hypothetical bona fide purchaser, the trustee under this subsection is deemed to have conducted a title search, paid value for the property and perfected its interest as a legal title holder as of the date of the commencement of the case. The trustee can exercise rights as a bona fide purchaser at the time of the commencement of the case regardless of actual knowledge. (Footnotes omitted.)

COLLIER ON BANKRUPTCY ¶ 544.08 (Alan N. Resnick & Henry J. Sommers eds., 15th ed. rev.2007).

---

**3.** **4.** These two references are obviously MLN typos. The references clearly should be to § 541, not § 544.

MLN is not avoiding a lien or conveyance, it is exercising the right of a hypothetical bona fide purchaser of real property to defeat an unrecorded ownership interest arising out of an express trust. But this application has nothing to do with a trustee recovering property as contemplated by § 541(a)(3) and § 550(a). On the date the petition was filed MLN had legal title to the Foreclosed Properties. This fact falls squarely within § 541(a)(1) which, in relevant part, provides: "Such an estate is comprised of all of the following property, wherever located and by whomever held: ... all *legal or equitable* interests of the debtor in property as of the commencement of the case." (emphasis added). Thus, the application of § 541(d): "Property in which the debtor holds, as of the commencement of a case, only legal title and not an equitable interest ... becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold."

The legislative history supports this conclusion.

The purpose of section 541(d) as applied to the secondary mortgage market is therefore to make certain that secondary mortgage market sales as they are currently structured are not subject to challenge by bankruptcy trustees and that purchasers of mortgages will be able to obtain the mortgages or interests in mortgages which they have purchased from trustees without the trustees asserting that a sale of mortgages is a loan from the purchaser to the seller.

Thus, as section 541(a)(1) clearly states, the estate is comprised of all legal or equitable interests of the debtor in property as of the commencement of the case. To the extent such an interest is limited in the hands of the debtor, it is equally limited in the hands of the estate....

124 Cong. Rec. 33,999 (S 17413), *reprinted in* Collier on Bankruptcy App. D, Pt. 4(f)(iii) at 4–2560 (15th ed. rev.2007)(hereinafter "Collier at 2559–60").

Section 541(d) identifies as an example of the kind of property coming into the estate "a mortgage secured by real property." But the application of § 541(d) is not limited to a mortgage secured by real property. The fact that MLN holds a deed rather than a mortgage is irrelevant. A mortgage or an interest in a mortgage as stated in § 541(d) is simply an example of "[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest...." As described above, for eight years MLN serviced the Wells Fargo mortgages in a manner fully cognizant of Wells Fargo's equitable interests and the absence of any MLN equitable interest, other than being compensated for the servicing, which it apparently has been so compensated. Since MLN had no equitable interest in the mortgages, it follows that it has no equitable interest in the Foreclosed Properties which are a product of the mortgages.

Other than the holding of a mortgage example set forth in § 541(d), I cannot imagine a more appropriate application of § 541(d) than the situation here. By its prepetition conduct MLN acknowledges that it held the Wells Fargo mortgages in the name of MLN but the fruits of those mortgages were enjoyed solely by Wells Fargo. Those fruits included ownership of real property upon foreclosure. The Foreclosed Properties are the product of Wells Fargo's mortgages. MLN is in no better position to keep the Foreclosed Properties than it was entitled to an equitable interest

in the Wells Fargo mortgages held in MLN's name.

If the foreclosures had not taken place and MLN held the mortgages in its name, then when the bankruptcy petition was filed Wells Fargo's equitable interest in the mortgages would clearly have been preserved pursuant to § 541(d). It is clear from the legislative history of § 541(d) that with respect to the mortgage servicing business, Congress intended to preserve the rights of mortgagees whose interests were not publicly recorded. The House and Senate committees issued a joint explanatory statement once they settled on language for § 541(d). The joint statement said:

> The seller of mortgages in the secondary mortgage market will often retain the original mortgage notes and related documents and the seller will not endorse the notes to reflect the sale to the purchaser. Similarly, *the purchaser will often not record the purchaser's ownership of the mortgages or interests in mortgages under State recording statutes. These facts are irrelevant and the seller's retention of the mortgage documents and the purchaser's decision not to record do not change the [bankruptcy] trustee's obligation to turn the mortgages or interests in mortgages over to the purchaser....* Under section 541(d), the trustee is required to recognize the purchaser's title to the mortgages or interests in mortgages and to turn this property over to the purchaser. It makes no difference whether the servicer and the purchaser characterize their relationship as one of trust, agency, or independent contractor. *The purpose of section 541(d) as applied to the secondary mortgage market is therefore to make certain that secondary mortgage market sales as they are currently structured are not subject to challenge by bankruptcy trustees....*

COLLIER at 2559–60. (emphasis added). An ownership interest following a foreclosure is obviously the product of the mortgagee's ownership interest in the mortgage. MLN's position flies in the face of the Congressional intent embodied in § 541(d).

██ Congress enacted § 541(d) to apply to this very type of case—i.e., where a mortgage servicer in the secondary mortgage market holds legal title to property that it is servicing on behalf of a purchaser of that property that does not publicly record its interest in the property. COLLIER at 2559–60. Under § 541(d) the bankruptcy trustee has an "obligation to turn the mortgages or interests in mortgages over to the purchaser" despite the purchaser's failure to publicly record its interest in the property. Collier at 2559–60. MLN's position is quite simple: an owner's failure to record an interest in property involved in a secondary mortgage market transaction, or a debtor/servicer's recording of legal title to the property in its own name, allows a trustee or debtor in possession to avoid the owner's equitable interest and bring the property into the estate for the benefit of the estate. That position is in flat contradiction to the intent of § 541(d). The following admonition of the Supreme Court seems appropriate here: "Statutory interpretations, which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available." *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564–75, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982).

There is a split of authority on the interplay between § 544(a) and § 541(d). The "majority view" is that § 544(a) trumps § 541(d). Thus, MLN claims that the issue in this case has already been resolved in this District by cases such as *In re Paul J. Paradise & Associates,* 249 B.R. 360

(D.Del.2000); *In re DVI, Inc.*, 306 B.R. 496, 501–02 (Bankr.D.Del.2004); and *In re Loewen Group International*, 292 B.R. 522 (Bankr.D.Del.2003), because all of them held that a trustee or debtor in possession could use § 544(a) to avoid unrecorded equitable interests in real property. But none of those cases involved express trusts in the context of transactions in the secondary mortgage market—the type of transactions which § 541(d) identifies as an example of its intended application. Furthermore, those cases did not analyze the interplay between § 541(a)(3) and § 550(a) to show that property, such as the Foreclosed Properties, comes into the estate through § 541(a)(1), not § 541(a)(3), and thus results in the application of § 541(d).

All of the cases relied upon by MLN involved constructive or resulting trusts. None of them involved an express trust and the only reported a decision involving an express trust in the secondary mortgage market squarely supports the conclusion I reach here. *See In re Columbia Pacific Mortgage, Inc.*, 20 B.R. 259 (Bankr.W.D.Wash.1981). Columbia Pacific originated residential mortgages, and then packaged the mortgages into pools and sold undivided participation interests in the pools to financial institutions. Columbia Pacific retained the servicing responsibilities. When three of the mortgage loans fell into default, Columbia Pacific foreclosed and obtained legal title to the properties in its own name. One of the participants asserted that it was the beneficial owner of its proportionate share of the value of the foreclosed properties. The chapter 11 trustee argued to the contrary that he was entitled to avoid the participant's interests under § 544(a) because the participant had never recorded its interest in the loans or the properties. The court rejected the trustee's argument. The court first observed that Congress's purpose in enacting § 541(d) "was to exempt secondary mortgage market transactions from compliance with state recording statutes and Article 9 of the Uniform Commercial Code and to make certain that secondary mortgage market sales as they are currently structured would not be subject to challenge by bankruptcy trustees." *Columbia Pacific*, 20 B.R. at 262. The court then held that the participation agreement created an express trust under state law, and that "as to trust property … the trustee holds subject to the interest of the beneficiary." *Id.* As for the trustee's argument that § 541(d) is simply a limitation on what is part of the estate as the commencement of the case, while § 544(a) allows a trustee to augment the estate by avoiding unrecorded interests, the court observed.

> It would be a complete frustration of Congressional intent to permit the trustee to bring into the estate under his bona fide purchaser rights property that Congress had specifically eliminated from the estate. In other words the immunization from the trustee's attack granted by Congress extends to all phases of the transactions and where the debtor obtains title pursuant to its servicing contract that title cannot be challenged by the trustee.

*Id.* at 264.

The court in *In re Richards* expressed a similar view:

> It is also not a foregone conclusion that the majority's construction of these statutes will allow the trustee to cut off the purchaser's rights in promissory notes and deeds of trust, when possession and legal title remain in the mortgage servicer. Clearly the language and legislative history of Section 541(d) sought to prevent the trustee of the servicing company from usurping the

true ownership rights of the purchaser in the context of secondary mortgage market transactions.

*Lewis v. Hare (In re Richards),* 275 B.R. 586, 591 (Bankr.D.Colo.2002).

In its opposition brief, MLN seeks to dismiss the cases decided prior to the 1984 amendment to § 541(d). Prior to 1984 § 541(d) referred to property coming into the estate "under subsection (a)". The 1984 amendment changed that reference to "under subsection (a)(1) or (a)(2)." Of course, as noted above, I do not agree that the Foreclosed Properties came into the estate pursuant to § 541(a)(3). I find that they came into the estate pursuant to § 541(a)(1) so that the 1984 amendment is not relevant here. The court in *Columbia Pacific* likewise found that the property came into the estate by way of § 541(a)(1), not § 541(a)(3). *Columbia Pacific,* 20 B.R. at 262.

The Servicing Agreements, portions of which are recited above, clearly show Wells Fargo as the beneficial owner of the mortgages and thus the beneficial owner of the proceeds of sales following foreclosures. MLN's pre-petition conduct in servicing the mortgages, including remitting foreclosure proceeds to Wells Fargo, is in fundamental conflict with what MLN is attempting to do here. Had the petition been filed before the subject foreclosures, Wells Fargo's interest in the mortgages would have resulted in foreclosures followed by sales with the net proceeds rightfully being remitted to Wells Fargo. On the undisputed facts here it is difficult to understand how MLN can seriously argue that § 541(d) has no application here or that it is trumped by § 544(a).

## Conclusion

For the reasons set forth above, I find that MLN holds only bare legal title to the Foreclosed Properties and that the entire equitable interest is owned by Wells Fargo.

## ORDER

For the reasons set forth in the Court's memorandum opinion of this date, the motion (Doc. # 4) of defendants Wells Fargo Bank, National Association and Wells Fargo Home Mortgage, Inc. to dismiss plaintiff Mortgage Lenders Network USA, Inc.'s second claim for relief is hereby treated as a motion for summary judgment and relief is granted in favor of defendants. The defendants are the sole equitable owners of the 26 properties foreclosed on by and titled to Mortgage Lenders Network USA.